## ALABAMA OIL AND PIPE LINE COMPANY v. THE SUN COMPANY.

### No. 1545. Decided April 2, 1906.

**1.—Contract—Oil Well—Delivery by the Month.**

A contract binding an oil company to take out and pay for a fixed amount of oil each month from the well of another company, except that where the amount had been exceeded it was only compelled to take enough subsequently to keep up the required average, was intended to protect the owning company from loss by failure to take from the well, month by month, the quantity named, while other wells were drawing from and exhausting the common source of supply; and the receiving company was not relieved from its liability for failure to take the quantity contracted for during any period by offering to take and pay for that amount subsequently. (P. 611.)

**2.—Contract—Cancellation—Damages Previously Incurred.**

The use of the words "rescind" or "cancel" in an agreement terminating a contract does not necessarily effect a discharge of the parties from liabilities previously incurred under it; whether the agreement should be given that effect is to be determined from the circumstances showing the intention of the parties. Haldeman & Chambers, 19 Texas, 1, limited. (Pp. 611–613.)

**3.—Same—Question of Intent.**

An agreement to cancel and annul a contract for taking and paying for a fixed quantity of oil each month by one party, from the well of another, considered in connection with circumstances bearing on the intention of the parties, and held not necessarily to operate as a release of liabilities incurred by one of the parties under the contract before its termination, the question being one of intent, to be left to the jury. (Pp. 609–613.)

Error to the Court of Civil Appeals for the First District, in an appeal from Jefferson County.

The Alabama, etc., Company sued the Sun Company. Defendant had judgment and plaintiff appealed and, on affirmance, obtained writ of error.

*Eugene E. Easterling,* for plaintiff in error.—The issue as to whether at the time plaintiff and defendant agreed to a cancellation of the contract an agreement was included by them whereby plaintiff released defendant from all damages, that had accrued already under the contract, was a question of fact for the jury to determine in view of all the testimony, and the court erred in taking it from the jury, and deciding it himself, and peremptorily instructing the jury to find on this issue against plaintiff. Keesey v. Old, 82 Texas, 22; Hobson v. Brunwankel, 24 Texas, 607; Overton v. Conner, 50 Texas, 113; Missouri, K. & T. Ry. Co. v. Smith, 10 Texas Ct. Rep., 302; Gulf, C. & S. F. Ry. Co. v. Gordon, 70 Texas, 80; O'Neil v. Knippa, 19 S. W. Rep., 1020; 9 Cyclopedia of Law and Procedure, 776, 778 and cases cited; Henderson Bridge Co. v. McGuth, 134 U. S., 260; Fire Ins. Assn. v. Wickham, 141 U. S., 564; Mayor, etc., of City of New York v. N. Y. Refrigerating Construction Co., 40 N. E. Rep., 771; Quigley v. Shedd, 104 Tenn., 560, 58 S. W. Rep., 266; Oil Well Supply Co. v. Wolfe, 127 Mo., 616, 30 S. W. Rep., 145; Blunt v. Guthrie, 99 N. C., 93; 5 S. E. Rep., 890.

The agreement between plaintiff and defendant cancelling the contract by mutual consent, not containing an express agreement settling all liability or damage then due plaintiff by defendant under the contract, it became necessarily a question of fact to be submitted to the jury for their determination, whether or not plaintiff and defendant in the agreement cancelling the contract included an agreement cancelling all damages that had accrued to plaintiff on account of defendant's breach of the contract prior thereto. Dunn v. Price, 87 Texas, 318; Summers v. Mill, 21 Texas, 78; Dorsey Printing Co. v. Gainsville, etc., Co., 61 S. W. Rep., 558; Joske v. Irvine, 91 Texas, 574; Robb v. San Antonio St. Ry. Co., 82 Texas, 392; Teal v. National Oil and Pipe L. Co., 68 S. W. Rep., 977; McCreery v. Day, 119 N. Y., 5, 23 N. E., 198; Davis v. Town of Seymore, 59 Conn., 531; 1 Beach on Contracts, 771, 772; Seals v. Edmundson, 73 Ala., 295; Simmons v. Johnson, 3 Barn. & Ad., 175; Lawrence v. Schuykill Nav. Co., 4 Wash. C. C., 562; Payler v. Homersham, 4 Maule & S., 423; Jackson v. Stackhouse, 1 Cow., 122; Grumley v. Webb, 44 Mo., 444; Price v. Treat, 29 Neb., 536; St. Louis, Ft. S. & W. Ry. Co. v. Davis, 35 Kans., 464.

There being evidence tending to show that the contract had been violated and broken by the defendant prior to the cancellation thereof, and that defendant was then due and owing plaintiff for more than three months' installments of $750 each, for oil defendant had agreed to take and pay for each month under the contract, which defendant, without any cause, had refused to take and pay for as contracted, and there being evidence that this liability owing by defendant to plaintiff was not settled by plaintiff and defendant in the agreement cancelling

the contract, the court erred in taking these issues of fact from the jury, and determining them as a matter of law, and peremptorily instructing the jury to find against plaintiff. Gulf, C. & S. F. Ry. Co. v. Dunman, 85 Texas, 176; Young v. Dalton, 83 Texas, 497; 8 Am. and Eng. Encyclopedia of Law (2d ed.), 632, 633, 634; Roehm v. Horst, 178 U. S., 1; Grannemann v. Kloepper, 24 Ill. App., 277; Tice v. Zensser, 76 N. Y., 549; Maden v. Blain, 66 Ga., 49; 1 Encyclopedia of Law and Procedure, 349; Cutter v. Cochrane, 116 Mass., 408; James v. Cotton, 7 Bing., 266; De Bernardy v. Harding, 8 Exch., 822; 21 Am. and Eng. Encyc. of Law (1st ed.), 92, 94.

The verdict of the jury is contrary to the evidence; the undisputed testimony showed that at the time plaintiff instituted its suit, defendant had secured from plaintiff's well under said contract and prior to its cancellation 427 17-100 barrels of oil, for which it had not paid plaintiff, and the court erred in overruling plaintiff's motion for a new trial and refusing to set aside the verdict of the jury and judgment of the court. Pauley Jail Building and Mfg. Co. v. Strain & Swinburn, 80 Texas, 622; Lee v. Wilkins, 1 Posey's Unrep. Cases, 301; Mayor, etc., of City of N. Y. v. N. Y. Refrig. Const. Co., 40 N. E. Rep., 771; McCreery v. Day, 119 N. Y., 5, 23 N. E. Rep., 198; Missouri, K. & T. Ry. Co. v. Smith, 10 Texas Ct. Rep., 302; Quigley v. Shedd, 104 Tenn., 560; Oil Well Supply Co. v. Wolfe, 127 Mo., 616; Fire Insurance Co. v. Wickham, 141 U. S., 564; Dunne v. Price, 87 Texas, 318; Alliance Milling Co. v. Eaton Guinan & Co., 24 S. W. Rep., 401; Gulf, C. & S. F. Ry. Co. v. Dunman, 85 Texas, 176; Young v. Dalton, 83 Texas, 497; 8 Am. and Eng. Encyc. of Law (2d ed.), 632, 633, 634; Roehm v. Horst, 178 U. S., 1; Constitution of Texas, art. 1, sec. 15; Rev. Stat. of Texas, arts. 3189, 3200; Choate v. San Antonio & A. P. Ry. Co., 91 Texas, 409.

*Greer & Minor* and *W. E. Miller,* for defendant in error.—The evidence showed without conflict that the contract, for an alleged breach of which this suit was brought, was mutually cancelled without any reservation or conditions whatever; and such being the case, the effect, construction and operation of such a cancellation was a question of law for the court, and no error was committed in giving the peremptory charge to find for the defendant on this branch of the case. Dunn v. Price, 87 Texas, 321, 322; Erskine v. Wilson, 27 Texas, 118; 9 Cyclopedia of Law and Procedure, 591; 1 Am. & Eng. Ency. of Law, 439; Brannock v. Elmore, 21 S. W. Rep. (Mo.), 452; Spragins v. White, 13 S. E. Rep., 171; McCreery v. Day, 23 N. E. Rep., 198; Mitchell v. De-Witt, 20 Texas, 294; City of San Antonio v. Lane, 32 Texas, 417; Teal v. Terrell, 58 Texas, 260; Eason v. Eason,. 61 Texas, 226; Mustain, Executor, v. Stokes, 90 Texas, 361; House v. Robertson, 89 Texas, 689; Joske v. Irvine, 91 Texas, 574; Aldridge v. Pardee, 60 S. W. Rep., 795.

The mutual cancellation of the contract, without reservation, qualification or conditions, puts an end to it and thereafter it is as if it had never been made, and an action for its nonperformance or a preceding breach of the same can not be thereafter maintained. Kelly v. Short, 75 S. W. Rep., 885; Haldeman v. Chambers, 19 Texas, 52; Foley v. Storrie, 23 S. W. Rep., 443; Anvil Mining Co. v. Humble, 153 U. S.,

551; Hayes v. City of Nashville, 80 Fed. Rep., 645; 9 Cyc. of Law and Proced., 593; 24 Am. & Eng. Ency., 626, 647; Alden v. Thurber, 21 N. E. Rep. (Mass.), 312; Hubberdston Lumber Co. v. Bates, 31 Mich., 158; Graves v. White, 87 N. Y., 463; McCreery v. Day, 16 Am. St. Rep., 793; also reported in 23 N. E. Rep., 198.

The mutual cancellation of the contract put an end to it, and was an accord and satisfaction of any claim appellant had thereunder, and it could not thereafter maintain an action on the contract, or recover the contract price for oil taken under the contract and not paid for. Alden v. Thurber, 21 N. E. Rep. (Mass.), 312; 1 Cyc. of Law and Proced., 439; Tice v. Zinsser, 76 N. Y., 549, and the authorities cited previously.

BROWN, ASSOCIATE JUSTICE.—The plaintiff in error sued the defendant in error for the value of 60,000 barrels of oil which the latter failed to receive under the contract sued on at five cents per barrel, and for the value of 8,000 barrels taken but not paid for. The pleadings are sufficient to admit the evidence introduced upon which the issues presented to this court arose. The facts in brief are: that the plaintiff in error, a corporation created under the laws of Texas, and the defendant in error, a foreign corporation, having a permit to do business in Texas, entered into a contract on the 2d day of December, 1901, by which the Alabama Company agreed to sell and deliver to the Sun Company 360,000 barrels of Beaumont crude oil and the Sun Company agreed to receive the said oil under the terms of the contract which stipulated that the Sun Company should construct its pipe line so that the oil could be delivered to it upon the land on which the Alabama Company's well was situated, and that the said Sun Company should receive 15,000 barrels per month for the first year, 10,000 barrels per month for the second year, and 5,000 barrels per month for the third year, with the exception stated as follows: "Excepting the average amount received during the preceding months shall be greater than the amount required under this contract up to that time, in which event said second party should only be required to take such amount of oil during said month as shall be necessary to make the required amount of oil to be delivered up to that period." On the 20th day of each month the Sun Company was to pay for the oil received at five cents per barrel. It was stipulated that if the well should cease to flow or the pressure should become insufficient to force the oil into the pipe of the Sun Company, then the latter should pump the oil at its own expense, except that the oil to be used to generate steam for pumping should be furnished by the Alabama Company without charge. This contract was made by R. C. Jelks, president of the Alabama Company, and J. Edgar Pew, general manager of the Sun Company, and no question is made of the authority of either to make the contract. The Sun Company received some oil from the Alabama Company for which it did not pay and for which suit was brought, but that is not involved in this writ of error. The well did cease to flow and the Sun Company took charge of the well and pumped the oil into its pipe line.

On the 31st of July, 1902, the Sun Company had failed to take the

quantity of oil required by the contract to the amount of 60,000 barrels. The latter company was pumping the well at the time, having full charge of it under the contract. Jelks, the president of the Alabama Company, became dissatisfied with the operation of the well by the Sun Company and claimed that the latter company was not making an effort to get the oil out while the common supply was being exhausted by other companies and persons who were pumping oil from the same field. Jelks called upon Pew and, stating his complaint against his management of the well, proposed to take the well back and operate it himself; and, after some discussion of the matter, which is not necessary here to state, an agreement was reached and Pew at once disconnected his pine line from the well and turned it over to Jelks. On the same day Jelks wrote the following note: Beaumont, Texas, July 31, 1902. J. E. Pew, Agt. Sun Co., City: Dear Sir: Confirming our conversation in your office, this morning, in which you agreed that the contract between the Alabama Oil and Pipe Line Co., executed by myself as president, and the Sun Company, executed by you as general manager, dated December 2, 1901; relating to the purchase of oil by said Sun Company, from the said Alabama Oil and Pipe Line Co., should be this day cancelled, and held of no further force and effect. This is to notify you therefore in writing, as requested by you, that said contract is now here declared to be this day cancelled, annulled and to have no further force and effect. Yours very truly, Ala. Oil and Pipe Line Co., R. C. Jelks, President." August 13, Pew wrote to Jelks as follows: "Beaumont, Texas, 8-13-02. R. C. Jelks, President, Alabama Oil and Pipe Line Co., Beaumont, Texas. Dear Sir: Acknowledging receipt of yours of the 31st cancelling contract of date of December 2, 1901, relating to the purchase of oil by the Sun Company from the Alabama Oil and Pipe Line Company, we beg to state that after referring the same to the Pittsburg office and in accordance with our conversation with you, it is satisfactory to cancel said contract upon the condition that each party hereto shall be released from liability to the other, on account of all transactions, had under said contract. With this understanding, your cancellation of the contract is satisfactory with us and we release the Alabama Oil and Pipe Line Company from further liability for the delivery of oil under said contract. We are advised by our Pittsburg office to make this release in accordance with the conditions herein specified. Yours respectfully, Sun Company, J. Edgar Pew, General Manager." To which Jelks replied as follows: "Beaumont, Texas, Aug. 13, 1902. The Sun Company, J. E. Pew, Mgr., City. Gentlemen: Replying to yours of the 13th inst., we beg to say that the contract of December 2, 1901, to which you refer, has already been cancelled by your consent long prior to your communication of the 13th inst. In thus cancelling the contract we did not waive and do not now intend to waive any claim for damages, or otherwise, which we have against you, and you are hereby respectfully notified that as you have consented to the cancellation of the contract, we will hold you as a trespasser if you undertake to interfere in any way with our oil. Yours truly, Alabama Oil and Pipe Line Co., by Watts, Chester & Ellison, Attys." To this Pew replied: "Beau-

mont, Texas, Aug. 15, 1902. Alabama Oil and Pipe Line Co., Beaumont, Texas. Gentlemen: As there seems to be a misunderstanding between us as to the terms of the cancellation of our contract, and as we can not and never did consent to such terms as you have asked, we would ask that you renew the connection you have taken apart and place us in a position to continue to take the oil on the contract as we are ready to take this oil now and will want it from month to month. Please have this attended to at once and notify us when we can get the oil, otherwise we shall hold you responsible for any failure to obtain the oil that is due us. Awaiting your reply, we are, Yours respectfully, Sun Company, General Manager."

It was proved that the oil came from a common source and that the failure to take oil out of a well was a loss of that much to the owner. The district judge instructed the jury to find a verdict for the defendant, which was done, and judgment entered in accordance with the verdict, which judgment was affirmed by the Court of Civil Appeals.

Counsel for the defendant in error claimed in the argument of this case that at the time of the cancellation the Sun Company had the right under the contract to take the 60,000 barrels of oil which it had failed to take in the preceding months. If that were true it would probably influence the interpretation of the agreement to cancel the contract; but we have carefully examined the contract and find no warrant for the claim; on the contrary, that instrument specifically provides that the Sun Company should "receive 15,000 barrels per month for the first year, 10,000 barrels per month for the second year, and 5,000 barrels per month for the third year," unless, "the average amount received during the preceding months shall be greater than the amount required under this contract up to that time," then the Sun Company would only be required to take so much as might be necessary to make the quantity required by the contract to be taken up to that period. By the terms of this contract it is made evident that the purpose was to have the oil taken out of the ground by the month, and a failure for any month to get the prescribed quantity of oil was a loss of that much to the Alabama Company, because the oil being derived from a common source, and other parties being engaged in pumping wells in the same field, the common supply would be reduced while the Alabama Company would be getting nothing. The provision for allowing the Sun Company to receive only so much as would complete the full amount when an excess had been before received excluded the idea that a failure to take for any month the specified number of barrels could be satisfied by receiving in addition that quantity of oil in a subsequent month.

The judgments of the District Court and of the Court of Civil Appeals rest upon the proposition that as a matter of law the agreement between Jelks and Pew to cancel the contract operated to discharge the Sun Company from its liability for damages on account of its failure to take the 60,000 barrels of oil without regard to the intention of the parties as it might be manifested by the attending circumstances. It is true that parties to a contract may agree to cancel it and, if there be nothing to indicate a different intention, each party will be fully discharged from all liability under such contract. But the use of the word,

"rescind" or "cancel," will not necessarily have that effect. The liability in this case must be referred to the terms of the agreement to cancel and, in order to interpret that agreement, we must look to the intention of the parties, the character of the contract to be cancelled and to the situation of the parties at the time as well as the attending facts and circumstances which throw light upon the question of intent. If it appears from these facts and circumstances that it was not the intention of the parties that the act of cancellation should have a retroactive effect to destroy previously vested rights, then the contract will be so construed as to preserve those rights. Cherry Valley Iron Works v. Florence Iron River Co., 64 Fed Rep., 569; McKnight v. Dunlop, 5 N. Y., 537; Hayes v. City of Nashville, 80 Fed. Rep., 641; Winton v. Spring, 18 Cal., 452; Mayor, etc., v. New York R. Co., 146 N. Y., 215; Roe v. Conway, 74 N. Y., 204; McCreery v. Day, 16 Am. St. Rep., 793.

In Hayes v. City of Nashville, above cited, Judge Taft uses this language: "It very frequently happens that laymen do not distinguish between these two ways of ending a contract, and, therefore, that words are used by a party which, literally and strictly construed, would effect a complete rescission and destruction of the contract, when the party's real intention was only to declare his release from further obligations to comply with the terms of the contract by the default of another party, and his intention to hold the other for damages. In such cases, courts consider, not only the language of the party, but all the circumstances, including the effect of a complete rescission upon the rights of the parties, and the probability or improbability that the complaining party intended such a result, in reaching a conclusion as to the proper construction of the language used."

In Mayor v. New York Refrigerating Construction Company, before cited, the Court of Appeals of New York said: "In view of the status when the comptroller, acting under the direction of the commissioners of the sinking fund, served his final notice, we think it was not a rescission in the strict technical sense which destroyed all rights of action, but was a termination of the contract according to its terms and left undisturbed all existing liabilities; the rescission had no retroactive effect. This result is to be fairly implied from all the surrounding circumstances and carries out the obvious meaning of the parties when the contract was executed."

The quotations made fairly reflect the authorities upon this question. In many cases the general proposition relied upon by the defendant in error is expressed broadly upon a state of facts which justified its application, but we have examined all of the cases that we have been able to find bearing upon this question and we have found no case in which the rule has been enforced where the facts showed a different intention.

Of the cases cited in support of the ruling we will notice only the case of Haldeman v. Chambers, 19 Texas, 1. In that case Judge Wheeler announced the general proposition contended for by counsel for the Sun Company. The rule as announced was applicable to the facts of that case, for in the cancelling instrument this language was used: "And we do hereby release each other from the said agreement, sale, transfer and assignment." Such explicit language did not leave

any room for explanation as to the intention of the parties and under no rule of construction could it be held that the parties in that case did not intend that all existing obligations which had arisen under previous contracts should be released and set aside. There was nothing to show a different intention.

In determining the question before us we must consider the evidence in that light which is most favorable to the Alabama Company, and, when so considered, we are of opinion there was sufficient testimony to authorize a finding by a jury that at the time the agreement between the two companies was made, Jelks did not intend to release the Sun Company from liability for its breach of the contract to receive the oil. It is consistent with the evidence to hold that the words, "this day cancelled and annulled, and to have no further force or effect," were intended by Jelks and understood by Pew to express that the contract for the delivery and receipt of the oil was on that day annulled as to future operations under it, and that it was not intended to have any retroactive effect upon rights already accrued between the parties. The construction that the District Court and Court of Civil Appeals placed upon the agreement of cancellation would result in a loss to the Alabama Company of the value of 60,000 barrels of oil because of the failure of the Sun Company to perform its part of the contract by receiving the oil by the month as it had agreed to do. Such a construction should not be applied unless the evidence was of a character to indicate that the parties intended it so to be.

The judge of the District Court erred by instructing a verdict for the defendant, and the Court of Civil Appeals also erred in affirming the judgment of the District Court, therefore, it is ordered that the judgments of both courts be reversed and that this cause be remanded.

*Reversed and remanded.*