TEAGUE v. AMERICAN NAT. INS. CO.
(No. 7739.)

(Court of Civil Appeals of Texas.    Galveston.
June 27, 1919.    Rehearing Denied
Oct. 9, 1919.)

1. INSURANCE &=84(1)—PROVISION FOR FORFEITURE OF CONTRACT WILL NOT BE ENFORCED WITHOUT CLEAR PROOF.

Where a life insurance company gave its agent a contract terminable at will of either party, without cause or notice, the original terms of which were modified to provide additional reward for ·additional .services, provisions that should the contract terminate by resignation, death, dismissal, or otherwise during the year, the salary or commission which the agent had received should be in full of all his claims and demands, were in the nature of forfeitures, not favored in law, and will not be enforced in the absence of clear proof that they were so intended.

2. INSURANCE &=84(1) — FORFEITURE CLAUSE IN AGENCY CONTRACT CONSTRUED.

A contract between a life insurance company and its agent, consisting in part of writing and in part of oral agreements, the writing containing provisions that, upon resignation, dismissal, death, or other termination of the agency during the year, the salary or commission which the agent had received should be in full of all his claims and demands upon the company, construed as meaning what agent had received up to such time, and that he forfeited anything that might afterward accrue on business done subsequent to his retirement, and also to contemplate a full adjustment and settlement ·of accounts on termination of agency.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by H. P. Teague against American National Insurance Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Pleasant F. Graves and H. L. Livingston, both of Houston, for appellant.

Williams & Neethe and C. W. Nugent, all of Galveston, and Kennerly, Williams, Lee & Hill, of Houston, for appellee.

GRAVES, J. H. P. Teague filed this suit against the American National Insurance Company, a corporation, to recover specified sums alleged to be due him by it under the terms of two written contracts between them of date July 20, 1915, and January 1, 1916, respectively, as well as under certain amendments and modifications thereof, charged to have been duly made by the company, verbally in some instances, and through written instructions in others; both contracts were declared upon by the plaintiff and made a part of his petition.

By the recitations of the first one he was to act as agent for the company at Houston, Tex., in securing applications for insurance policies to be issued by it, which he averred he did until January 1, 1916, when he was promoted to the position of assistant superintendent, and given the second contract, under which he worked until his resignation, on November 9, 1917.

The provisions of the contracts on which the case turned below were these:

Paragraph I in the agency contract of July 20, 1915:

"It is hereby mutually agreed that if this agreement and the employment thereunder shall terminate for any cause, by resignation, dismissal, death, or otherwise, during any year, the salary or commission which said agent shall have received from the company shall be in full of all claims and demands upon the company in favor of said agent under this agreement for his services up to the time in any capacity, and all further salary or commission which a successful continuance of the agency might have secured to him shall be forfeited, except, however, if said agent has received any amount in excess of what he has earned under this agreement, he shall refund same to the company at the termination of the agreement."

Paragraph K from the assistant superintendency contract of January 1, 1916:

"It is hereby mutually agreed that for any cause either party shall be at liberty to terminate this agreement without notice to the other, and, in case of resignation, death, or dismissal of said assistant superintendent during the year, the compensation which shall have been paid to said assistant superintendent under this agreement shall be in full of all claims and demands upon the company in favor of said assistant superintendent under this agreement for his service up to that time in any capacity, and all further salary or commission which a successful continuance of the assistant superintendency might have secured to him shall be forfeited, except, however, if said assistant superintendent has received any amount in excess of what he has earned under this agreement, he shall refund same to the company at the expiration of this agreement."

Notwithstanding these particular clauses in the successive contracts he sued upon, Teague declared the company indebted to him under their general contractual relations, as so amended and changed in various specified amounts in the way of special salaries, bonuses, commissions, moneys expended by him for its benefit and account, amounts exacted of him by the company that should have been paid by others, and charged that it had never paid him anything whatever thereon except $100 on a particular bonus account.

Under the first or agency contract and amendments thereto, it was averred that a total of $423.13 had been promised and had become due him, $225.88 of it for a special salary of fifteen times the weekly premium on certain enumerated policies, $105 as a bonus in amount equal to three times the net annual increase, reduced to a weekly basis, on ordinary business produced by plaintiff, and $92.25 as a bonus of five times the net increase in life, limited payment, and endowment policies issued on applications obtained by him.

In like manner he averred there had been promised and was due him under the assistant superintendency contract, as amended and modified, in addition to other salaries and commissions, a total of $893.62, these being the items: A bonus of $330, being an amount equal to twice the net annual increase, reduced to a weekly basis, on all ordinary business; the sum of $182.04 as an increase in his guaranteed weekly salary, the same to be computed and to become due him under certain conditions detailed in the contract, all of which were averred to have been met and complied with; an aggregate of $237.94 for a special salary of three and four times the total net increase of the collectable weekly debit of all agents working under plaintiff, less premiums on policies transferred from other agencies, such special salary being computed for the two different periods from January 1, 1916, to June 30, 1917, and July 1, 1917, to November 9, 1917, also $17.51 for commissions on policies secured by him, $51.13 paid the company by him on shortages of other agents, and $75.66 charged against his account by defendant on excess arrearages of other agents, both of which last-mentioned amounts were alleged to have been wrongfully charged against plaintiff. He sought judgment for the $1,316.75 thus claimed to be due, less $100 acknowledged to have been received "as a bonus on times increase," leaving a balance for which recovery was asked of $1,216.75.

The defendant company presented, and the trial court sustained, a general demurrer, as

well as several special exceptions, to this petition, and, upon the refusal of the plaintiff to further amend, judgment was rendered for the defendant on the pleadings. From that action this appeal proceeds.

[1] We think the court below erred, and that the pleading stated a good ·cause of action. The· court's view, as reflected by the recitations in the judgment, was that the above-quoted provisions I and K in the contracts barred, any recovery by the appellant; that he was already bound under their original terms to perform all the services he alleged, even through the amendments and modifications, without the promise or hope of any additional reward; that consequently he furnished no new consideration to the company for any promise it may have made him of further remuneration for extra effort; and that such promises on its part, therefore, amounted, at most, to mere gratuitous statements about services it was entitled to receive for the compensation as originally fixed.

To give the contracts this effect, it is necessary not only to single out and construe the copied stipulations most strongly in favor of the party promulgating them, the insurance company—since the averment was made that it did so—but also to read into them the strictest sort of forfeitures, thereby violating, it seems to us, two widely accepted rules of construction of such instruments in controversies· over them between the immediate parties thereto.   Armstrong v. Life Ins. Co., 112 S. W. 327; Alabama Oil Co. v. Sun Co., 99 Tex. 606, 92 S. W. 253; Singer Co. v. Brewer, 78 Ark. 202, 93 S. W. 755; Washington Life Ins. Co. v. Reinhardt, 142 S. W. 603; Simmons Hardware Co. v. Adams, 147 S. W. 1197; Elliott on Contracts, vol. 3, pars. 1988–9.

As said in the cases cited, such provisions are in their nature forfeitures, are not favored in law, and will not be so enforced except upon clear proof that they were so intended, or unless there is no escape from so doing, especially where the party asking such construction drew the contract.   To so hold in this instance is to say that if this appellant had in fact received one cent from the insurance company for his services on any account between them, although it may then still owe him thousands of dollars, he was forever precluded and must be considered as having entirely forfeited any such balance as a consequence of the mere act of resigning, having been promoted to a higher position with the same company, or of otherwise changing his relations toward it.

At this point it is well to note that these contracts were terminable at the will of either party, on instant action, with or without either cause or notice, and as other portions of their context than the quoted stipulations show did not bind Teague to work even for a day if he did not want to.   In the first one it was not even specified that he should give all his time to the business, but there simply appeared an inquiry as to whether he intended to do so.   There was no designated amount of work he was to do, no particular amount in applications he was to secure, no number of active hours per day prescribed—just that he was to act as agent for the company.

These facts differentiate the case here presented from those passed upon in the cases cited by the appellee upon this question.   It will be found, we think, that in each of them there was a particular piece of work to be done, or a particular enterprise or thing to be accomplished in a specified way, in a prescribed time, and for a fixed consideration.   In other words, the matter to be done was to be performed in a detailed, agreed-upon manner, time, and place, so that the party claiming the additional compensation could not show that he had done anything additional to what was contracted for when he made his original contract.

[2] In combating the construction adopted by the trial court here, the appellant contends that the purpose and effect of the modifications and amendments he alleged was to promise him other and further bonuses, salaries, and compensations than those specified in the contracts as originally written for additional services; that their object was to induce him to work harder, make greater exertions, than he had before contracted or was expected to put forth; and thus secure for the insurance company more policies and premiums than the ordinary agent or assistant superintendent might do on contracts like his own as first written; and that, if he worked one day or hour under such modified contracts, he furnished a consideration for the additional benefits so promised him, in the increased business and premiums to the company, and in the mutual interests served and promoted by his extra efforts.

Considering the contracts as a whole, in the light of the attending circumstances, which, since they were in their entirety attached to the petition, not only may, but should, be done in arriving at the intention of the parties, ·that seems to us much the more reasonable interpretation of what must have been the purpose and meaning of those who made them.   The case of Ross v. Moore, 191 S. W. 853, in which a writ of error was denied, and the authorities therein cited, are thought to strongly support this conclusion.   See, also, Blair v. Slosson, 27 Tex. Civ. App. 403, 66 S. W. 112; Foley v. Storrie, 4 Tex. Civ. App. 377, 23 S. W. 442.

Indeed, we think the contracts themselves, in the language used in the copied paragraphs, furnish internal evidence of the correctness of this view.   In both of them it is provided, after severance of relations, that "all further salary or commission which a successful continuance of the agency (as-

sistant superintendency) might have secured to him shall be forfeited," etc.; thereby plainly implying and evidently meaning that the agent was entitled to what had accrued on business done by him up to that time, but that he forfeited anything that might thereafter accrue on business done subsequent to his retirement, Such is the view taken of a very similar contract by the Supreme Court of California in the case of Burleson v. N. W. Mut. L. Ins. Co., 86 Cal. 342, 24 Pac. 1064.

Moreover, it is, in general substance and form, appropriate to the different capacity recited in each of the paragraphs referred to "in case of resignation, death, or dismissal of said assistant superintendent during any year, the compensation which shall have been *paid* to said assistant superintendent under this agreement shall be in full of all claims," etc. This apparently presupposes or contemplates a full adjustment and settlement of accounts between them, and so presumably refers to the money that the retiring superintendent has received and accepted as in accord and satisfaction of all his claims against the company. Manifestly, then, in the absence of any such balancing of general accounts, the mere receipt on one special account of a very small part of what is claimed to be due could not be held to discharge the entire debt, as the insurance company here contends.

It is not thought necessary to further extend the discussion; for the error of the court in sustaining the demurrer the judgment is reversed, and the cause remanded for trial upon its merits.

Reversed and remanded.