David DEWHURST, Commissioner of
the General Land Office of the
State of Texas, Appellant,

v.

GULF MARINE INSTITUTE OF
TECHNOLOGY, Appellee.

No. 13–00–738–CV.

Court of Appeals of Texas,
Corpus Christi.

July 12, 2001.

Rehearing Overruled Sept. 13, 2001.

Joe Foy, Jr., Asst. Atty. Gen., Austin, for Appellant.

Ronald B. Collins, Duckett, Bouligny & Collins, El Campo, William P. Maines, McDade & Fogler, Houston, for Appellee.

Before Justices HINOJOSA, CASTILLO, and AMIDEI.[1]

## OPINION

AMIDEI, Justice.

This is an interlocutory appeal of the denial of a plea to the jurisdiction filed by David Dewhurst, Commissioner of the General Land Office of the State of Texas (hereinafter referred to as "Dewhurst"), defendant, appellant in this Court, in a suit brought by Gulf Marine Institute of Technology (hereinafter referred to as "GMIT"), appellee. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2001). In one issue, Dewhurst contends the trial court lacked subject matter jurisdiction because the sovereign cannot be sued to specifically perform a contract absent a statutory mandate or legislative consent to suit, neither of which is present in this case. We affirm.

### Procedural Background

GMIT filed its original petition on May 12, 2000. Dewhurst filed his plea to the jurisdiction, and thereafter filed his original answer subject to his plea to the jurisdiction. GMIT filed its response to Dewhurst's plea to the jurisdiction. Dewhurst filed his reply to GMIT's response to Dewhurst's plea to the jurisdiction. The trial court held a hearing on Dewhurst's plea to the jurisdiction, and denied the plea on November 15, 2000. No findings of fact or conclusions of law were requested or filed. Dewhurst filed a notice of appeal on December 4, 2000.

### Appeals Court Jurisdiction/Standard of Review

■ We have jurisdiction to review a trial court's denial of a plea to the jurisdiction by a governmental unit. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2001). For purposes of a plea to the jurisdiction, the court looks only to the allegations in the plaintiff's petition, unless evidence is necessary to resolve the jurisdictional issues raised. *Bland ISD v. Blue*, 34 S.W.3d 547, 555 (Tex.2000); *City of El Campo v. Rubio*, 980 S.W.2d 943, 945 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.). We take the plaintiff's factual allegations as true, *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 469 (Tex.1949); *Alamo Cmty. College Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 746 (Tex.App.—San Antonio 1998, pet. denied), and we construe them in favor of the pleader. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993).

■ The district court was required to *liberally construe the allegations in fa-*

1. Former Justice Maurice Amidei, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

*vor of jurisdiction* unless the face of the petition affirmatively demonstrates a lack of jurisdiction. *Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989).

In summary, to successfully challenge at the pretrial stage a trial court's jurisdiction to hear the subject matter of plaintiff's claim, the defendant must demonstrate either that: (1) the plaintiff's pleadings, taken as true, affirmatively establish that the court does not have subject-matter jurisdiction, or (2) the plaintiff pleaded fraudulently or in bad faith with the purposes of conferring jurisdiction where under the true facts the court would not have it.

*Mission Consol. Indep. Sch. Dist. v. Flores*, 39 S.W.3d 674, 676–77 (Tex.App.—Corpus Christi 2001, no pet.).

For purposes of this appeal the material facts are undisputed. It is a matter of law to determine whether GMIT's suit is a suit against the State for specific performance and damages rather than a suit for injunctive relief and declaratory judgment.

### Facts

GMIT planned to utilize an oil and gas offshore platform to convert to manned mariculture research facilities to develop techniques to grow finfish. Having determined that a platform owned by Seagull Energy E & P, Inc. (hereinafter referred to as "Seagull"), also a defendant in this case, was suitable for its operations, GMIT sought and received from Gary Mauro, who was then the Commissioner of the General Land Office ("GLO"), the grant of its application to receive as assignee the surface and subsurface lease held by Seagull on state lands in the Gulf of Mexico off Matagorda Island, Matagorda County, Texas. The lease had been used by Seagull and Tenneco, its predecessor, to locate a platform to directionally drill two wells to federal lands adjacent thereto and produce oil and gas therefrom, and was never a lease for the production of oil and gas from state-owned lands. The term of the lease was fifty years from August 27, 1986, the date of the lease to Tenneco, or until the time at which the two wells shall have been plugged and abandoned in accordance with all applicable rules and regulations promulgated by oil and gas regulatory agencies having jurisdiction with respect thereto. Prior to the assignment being approved by the GLO, full disclosure was made to the GLO of GMIT's intended use of the platform for mariculture purposes and not the production of oil and gas, and GMIT required Seagull to plug and abandon and remove all production equipment from the platform. The lease did not prohibit a purpose or use other than the original use utilized by the first lessee, Tenneco. Although the lease was never a lease of State oil and gas, under which the State could require removal of the platform after plugging and abandonment of wells, *see* 31 Tex. Admin. Code § 9.91 (1999), Mauro required GMIT to provide a 2.6 million-dollar bond to insure the removal of the platform upon abandonment of the mariculture operations. The bond inured to the benefit of the State notwithstanding Seagull was named obligee. The State could not have required the bond of Seagull, as it had already obtained an assignment from Tenneco without bond. Commissioner Mauro: (1) knew the purpose for which GMIT wanted the lease and platform at the time of the assignment; (2) knew there was no oil or gas production from the platform at that time; (3) had the authority to lease the surface and subsurface of the leased property and to make subsequent assignment of the lease; (4) approved the assignment from Seagull to GMIT, as it made perfect sense and perfect economics for the State to receive more from GMIT than it had from

the previous lessees; (5) stated that the proposed mariculture project would be a permissible use under the terms of the original Tenneco lease; (6) made no other requirements for the assignment and believed that GMIT's proposed mariculture project for the platform would go forward, as he believed everything had been taken care of and there were no other requirements necessary for GMIT to conduct its project; (7) contemplated making amendments to the lease because the project was unique and the GLO had not developed forms for offshore mariculture operations; and (8) stated that since GMIT assumed the liability by giving something of value to the State, GMIT had the authority to begin its project and the State had to let GMIT use the property. In September 1998, the GLO furnished GMIT with the forms for the lease that dealt with the mariculture operations. The GLO did not tender a draft of the proposed amendments to the lease to GMIT until December 1998. Suggested revisions to this draft were made by GMIT and returned to the GLO for approval. GMIT paid the State fifty dollars consideration to make the assignment. The assignment and GMIT's bond were approved and accepted in writing by the GLO on September 18, 1998. On January 1, 1999, Dewhurst became the Commissioner of the GLO, and after taking office, directed that the assignment be recorded in the Matagorda County Deed Records. Dewhurst negotiated with GMIT for "roughly" one year to modify the lease terms as originally contemplated by Mauro. During the year of negotiations, Dewhurst's staff sat on the negotiations for 7½ months without doing anything. Dewhurst could not explain the delay. On May 12, 1999, Dewhurst notified GMIT that he was denying GMIT the right to use the platform area for mariculture purposes; that he considered the assigned

lease to be terminated; that he was not convinced GMIT's project was a "coherent," "reasonable" business plan which would be an "unqualified financial success." Dewhurst did not know of any other use (other than GMIT's project) or competing use for which the platform could be used. The GLO did not indicate that GMIT's financing was inadequate.

## Sovereign Immunity; Whether Legislature Must Consent

■ Dewhurst argues that GMIT's suit is for specific performance and is a suit against the State requiring the consent of the legislature, which GMIT did not obtain prior to filing. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). However, as GMIT points out, a private litigant does not need legislative permission to sue the State for a state official's violations of state law, because such a suit is not a suit against the State barred by sovereign immunity. *Director of the Dep't of Agric. and Env't v. Printing Indus. Ass'n.*, 600 S.W.2d 264, 265–66 (Tex.1980) (holding legislative consent is not required for suit for injunctive relief against state agency to halt unauthorized printing equipment and printing activities); *Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.*, 372 S.W.2d 525, 530 (Tex.1963) (holding legislative consent not required for declaratory judgment suit against Highway Commission to determine the parties' rights); *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (1945) (holding legislative consent not required for declaratory judgment suit against State Comptroller to determine parties' rights under tax statute). A state official's illegal or unauthorized actions are not acts of the State. Accordingly, an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not

a suit against the State that sovereign immunity bars. In other words, we distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission. *See Federal Sign,* 951 S.W.2d at 404.

It was Dewhurst's burden to show: (1) the facts pleaded by GMIT were insufficient to convey jurisdiction, or (2) that they were fraudulent or in bad faith for the purposes of conveying jurisdiction on the trial court. *Mission Consolidated Indep. Sch. Dist.,* 39 S.W.3d at 676.

GMIT alleges that Dewhurst acted illegally or without authority in declaring the lease to be terminated and ordering GMIT to remove or dismantle the platform. GMIT seeks to have a court declaration of its rights under the lease and injunctive relief.

### Ambiguity in the Assignment; Equitable Construction

The term of the assigned lease was fifty years from August 27, 1986, or until the time the two wells to be drilled shall have been plugged and abandoned in accordance with all applicable rules and regulations promulgated by oil and gas regulatory agencies having jurisdiction with respect thereto. The provision regarding plugging and abandoning the wells conflicts with the purpose of the assignment as intended by the parties, who knew the wells were plugged and abandoned by agreement as a condition to making the assignment at the outset. This conflict must be construed so as to render the assignment valid and effective. In *Portland Gasoline Co. v. Superior Mktg. Co.,* 150 Tex. 533, 243 S.W.2d 823, 825 (1951), *overruled on other grounds, Northern Natural Gas Co. v. Conoco, Inc.,* 986 S.W.2d 603, 608 (Tex.1998), where the de-

fendants claimed that a contract to market all the butane-propane gas mixture produced by plaintiff at a natural gas processing plant was void for want of mutuality or as violating the Anti–Trust Act, the Texas Supreme Court upheld the contract applying the law equally applicable in this case, as follows:

> Under well recognized principles of law, the construction of the contract urged by appellees must be rejected if there be some reasonable construction of the contract which would render it valid and enforceable. 'It is not to be presumed that the parties intended that an impossible thing should be done,' *or 'that the parties deliberately entered into an agreement calling for an impossible condition or event as a test of performance.'* 17 C.J.S., Contracts, Sec. 318, note page 739. *'A construction which renders performance of the contract possible will be adopted, rather than one which renders its performance impossible or meaningless, unless the latter construction is absolutely necessary; and it has been held that no matter how clear the ordinary significance of the words, they must not be given a meaning which, when applied to the subject matter of the contract, will render performance impossible.'* 17 C.J.S., Contracts, Sec. 318, page 738. (Emphasis supplied).

*Id.*

Since the parties are presumed to know the law and intend their contract should have legal effect, their contract will be construed in view of this presumption. *C.C. Slaughter Cattle Co. v. Potter County,* 235 S.W. 295 (Tex.Civ.App.—Amarillo 1921), *aff'd,* 254 S.W. 775 (Tex. Comm'n App.1923, judgm't adopted); *Foard County v. Sandifer,* 105 Tex. 420, 425, 151 S.W. 523, 524 (Tex.1912). To construe the assignment so as to terminate it before it

commenced, that is, upon plugging and abandonment of the wells, would be unreasonable, oppressive and ridiculous. *Guardian Trust Co. v. Bauereisen,* 132 Tex. 396, 406, 121 S.W.2d 579, 584 (1938). If there is a reasonable construction to render the contract valid and enforceable, the court will not presume the parties intended to call for an impossible condition precedent as a test of performance, but instead will adopt a construction rendering performance possible. *Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109, 115 (Tex.1978).

■ Equity will not permit the enforcement of a forfeiture in an inequitable and oppressive manner or a perversion of it for purposes other than those for which the power of forfeiture has been reserved. Equity will relieve against a forfeiture whenever enforcement would be against good conscience. *National Surety Corp. v. Western Fire & Indem. Co.,* 318 F.2d 379, 386 (5th Cir.1963) (where contract is susceptible of two constructions, the one will be preferred that is rational, reasonable and probable and will result in a contract in terms prudent men would naturally make); *Gardner v. Platt,* 68 S.W.2d 297, 299 (Tex.Civ.App.—Austin 1934, writ ref'd); *Missouri State Life Ins. Co. v. Le Fevre,* 10 S.W.2d 267, 270 (Tex.Civ.App.—Waco 1928, writ dism'd w.o.j.); In *Page v. Superior Stone Prod., Inc.,* 412 S.W.2d 660 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.), a construction company contended that provision in a materials contract with a concrete company, "subject only to the award on the contract," constituted a condition precedent to personal liability of its president and meant the condition was not met without an award of the highway contract to the president. The court in *Page* held,

Under appellant's contention, it would have been impossible for the parties to perform the materials contract. This theory would place appellant in the position of making the contract knowing that the condition could not be met, since he did not intend to bid individually on the Lee County job. It is unreasonable to view the facts in such manner as to find that Holland Page contracted with appellee out of frivolous motives or with intent to work a fraud.

*Id.* at 664.

■ Using the reasoning of the court in the *Page* case, it would have been impossible for the parties to perform under the assignment/lease, if the contention of Dewhurst were accepted. This theory would place Mauro/Dewhurst in the position of making the contract, knowing that the plugging and abandonment of the wells had occurred prior to or simultaneously with the execution of the assignment. It is unreasonable to view the facts in such manner as to find that Mauro/Dewhurst contracted with GMIT out of frivolous motives or with the intent to work a fraud. This theory would place the parties in the position of making the contract knowing that the condition could not be met, since they knew the wells were going to be plugged and abandoned by Seagull as required by GMIT pursuant to their agreement prior to the approval of Mauro. In this connection, GMIT's petition alleges the following:

*Count 5—Breach of Contract*

. . . Prior to the Assignment being approved by the GLO, full disclosure was made to the GLO of Plaintiff's intended use of the platform for mariculture purposes and not production of oil and gas and, *in fact, GMIT had required SEAGULL to plug, abandon and remove all production equipment from the platform.* By approving the Assignment of the lease, the GLO entered into a contractual relationship with Plaintiff with

the understanding that the platform and surrounding area would be used for mariculture research and development purposes. (Emphasis supplied).

The contractual relationship which allows GMIT to operate its business from the platform is rational, reasonable, probable, and will result in a contract in terms prudent men would naturally make. *Id.* After lengthy negotiations to further modify the lease to more mutually convenient terms, GMIT claims it was illegal and arbitrary for Dewhurst to declare the lease to be at an end, and to order the removal of the platform merely because he did not believe GMIT's project was a coherent and reasonable business plan. GMIT further contends that previous consent of the legislature is not required as a prerequisite to its suit as it is not a suit against the State. We agree.

▮ Another rule of construction, equally applicable, is that a contract will not be construed as to produce a forfeiture of a legal or equitable estate unless that intention is plainly indicated in the contract, *G.C. Murphy Co. v. Lack,* 404 S.W.2d 853, 858 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.); and *Dilbeck v. Bill Gaynier, Inc.,* 368 S.W.2d 804, 807 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.). This is especially true since forfeiture of rights or property by virtue of stipulations in contracts is regarded with disfavor. *Wichita Falls Grain Co. v. Taylor Foundry Co.,* 649 S.W.2d 798, 800 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.); *Surko v. Harrison,* 391 S.W.2d 115, 120 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.); *Noble v. Texacon Indus., Inc.,* 367 S.W.2d 872, 876 (Tex.Civ.App.—San Antonio 1963, no writ); *McCarty v. Langdeau,* 337 S.W.2d 407, 413 (Tex.Civ.App.—Austin 1960, writ ref'd n.r.e.). There must be no question that the parties intended to provide for a forfeiture in the contract

under which enforcement of forfeiture is attempted, and there must be evidence on clear proof that a forfeiture is intended. *Small-Lynch Co. v. Midwest & Gulf Co. of Tex.Trust Estate,* 269 S.W. 163, 169–70 (Tex.Civ.App.—Fort Worth 1924, no writ); *Teague v. American Nat'l Ins. Co.,* 215 S.W. 131, 133 (Tex.Civ.App.—Galveston 1919) *aff'd,* 237 S.W. 248 (Tex.Comm'n App.1922, judgm't adopted). The intention should be discovered, if possible, from the language used, but when a doubt is raised as to whether a forfeiture is intended, even though the language seems clear, the facts and circumstances attending the execution of the contract, and the situation of the parties at the time with reference to the subject matter, may be looked to in ascertaining the intention and the meaning that is to be given to the words. *Wright v. Dobie,* 3 Tex.Civ.App. 194, 196, 22 S.W. 66, 67 (1893, no writ). Forfeiture may not be based on an ambiguous clause in the contract. *Christie, Mitchell & Mitchell Co. v. Selz,* 313 S.W.2d 352, 354 (Tex.Civ.App.—Fort Worth 1958, writ dism'd w.o.j.); *Union Sulphur Co. v. Texas Gulf Sulphur Co.,* 42 S.W.2d 182, 188 (Tex.Civ.App.—Austin 1931, writ ref'd); *Marchman v. McCoy Hotel Operating Co.,* 21 S.W.2d 552, 557 (Tex.Civ.App.—Fort Worth 1929, no writ); *Fort Worth Mut. Benev. Ass'n v. Jennings,* 283 S.W. 910, 912 (Tex.Civ. App.—Eastland 1926, no writ).

▮ Further, because of the actions of Mauro and Dewhurst during and after the execution of the assignment, the forfeiture provision was waived and the State is estopped from terminating the assignment/lease by virtue of the two wells having been plugged and abandoned. *Underwood v. Security Life & Annuity Co.,* 108 Tex. 381, 388, 194 S.W. 585, 587 (1917); *Joiner v. Elrod,* 716 S.W.2d 606, 609–10 (Tex.App.—Corpus Christi 1986, no writ) (waiver of forfeiture by party for whose

benefit it was made); *American Cas. Co. v. Conn.,* 741 S.W.2d 536, 539–40 (Tex. App.—Austin 1987, no writ) (waiver of forfeiture either expressly or by conduct inconsistent with the exercise of the right); *State v. Bryan,* 210 S.W.2d 455, 464 (Tex. Civ.App.—Austin 1948, writ ref'd n.r.e.). (It is well settled that when the State makes itself a party to an action in its proprietary capacity it is subject to the law of estoppel, as other parties litigant (citing 49 Am.Jur., § 85, p. 298) and *Anderson, Clayton & Co. v. State,* 122 Tex. 530, 62 S.W.2d 107 (1933)). Waiver by Mauro and Dewhurst is implied from their conduct evidencing an intention not to insist on compliance with the provisions of the original lease or inconsistent with a determination to terminate the lease. *U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 357 (Tex.1971); *Sasser v. Dantex Oil & Gas, Inc.,* 906 S.W.2d 599, 603 (Tex.App.—San Antonio 1995, writ denied); *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.,* 938 S.W.2d 102, 112 (Tex.App.—Houston [14th Dist.] 1996, no writ) (where a tenant assigned a lease without first obtaining the lessor's consent, the right to forfeiture was waived by the acceptance of rent after the assignment or sublease). When Mauro knew that the wells were to be plugged and abandoned by agreement, he should have exercised the State's right to terminate to avoid waiver of the right or estoppel from exercising it. *Wisdom v. Minchen,* 154 S.W.2d 330, 336 (Tex.Civ.App.—Galveston 1941, writ ref'd w.o.m.); *Gardner v. Platt,* 68 S.W.2d 297, 299 (Tex.Civ.App.—Austin 1934, writ ref'd); *Tickner v. Luse,* 220 S.W. 578, 580 (Tex.Civ.App.—El Paso 1920, writ ref'd). The fact that Mauro required GMIT to post a 2.6 million dollar bond to assure that the platform is re-

moved after operations cease, that Dewhurst ratified the Assignment by having it filed of record in the deed records, and continued negotiating for terms relating to the change of the use of the platform, indicate Mauro and Dewhurst were not asserting and insisting on the forfeiture of the Assignment because of the plugging and abandonment of the two wells by Seagull. The GLO under Mauro waived the forfeiture provision by requiring the 2.6 million dollar bond. Further, the GLO under Dewhurst waived the forfeiture provision by leading GMIT to believe all it had to do was to present evidence of a proper business plan, its financial soundness and corporate integrity. Dewhurst does not claim he insisted the Assignment was terminated because of the plugging and abandonment of the wells. In his plea to the jurisdiction, Dewhurst only asserts that 31 TEX. ADMIN CODE § 9.91 (1999) requires the removal of platforms within 120 days after plugging and abandonment, but concedes the requirements of that regulation would have been "obviated" had GMIT satisfied him it had a proper business plan, financial soundness and corporate integrity. In other words, Dewhurst admits that the plugging and abandonment of the wells would not have required termination and the removal of the platform had he been satisfied as to the terms of the proposed amendment of the Assignment.[2] Dewhurst erroneously believes that the Assignment is not a contract and that his negotiations with GMIT were to form an entirely new contract. The Assignment is the contract which GMIT and Mauro agreed to amend to make it more compatible with the proposed mariculture operations, but they just did not memorialize the amendment before Mauro left office.

**2.** Contrary to this position, Dewhurst's brief contends the lease was extinguished when

Seagull plugged the wells.

When Mauro and GMIT signed the Assignment it bound the State and GMIT notwithstanding the parties agreed to change or modify some of its terms. The right to forfeiture must be asserted and insisted upon at every stage, and the party claiming the right cannot take any step inconsistent with the right as did Mauro and Dewhurst. *Bailey v. Sovereign Camp, W.O.W.,* 116 Tex. 160, 166, 286 S.W. 456, 457–58 (1926) reh'g overruled, 116 Tex. 160, 288 S.W. 115 (1926).

As a consequence, now Dewhurst cannot insist on the forfeiture provision and GMIT is entitled to a declaratory judgment: (1) declaring that the forfeiture provision in the lease cannot be enforced by Dewhurst or the State for the reasons above set forth, and (2) declaring that a reasonable construction of the lease term is that it did not end at the time the two wells were plugged and abandoned by agreement but shall continue for 50 years beginning on August 27, 1986, or until GMIT ceases its mariculture operations thereon. *CU Lloyd's of Tex. v. Feldman,* 977 S.W.2d 568 (Tex.1998).

 In the absence of findings of fact, we must presume the trial court considered the facts alleged and the prayer for relief and determined the nature of GMIT's suit to be for declaratory judgment that Dewhurst acted illegally or without authority and for injunctive relief. *Carlin v. 3V Inc.,* 928 S.W.2d 291, 294 (Tex.App.—Houston [14th Dist.] 1996, no writ); 6 RICHARD ORSINGER, McDONALD TEXAS CIVIL APPELLATE PRACTICE § 18.10(C) (rev.1992). As it was the trial court's discretion whether to file findings of fact regarding an interlocutory order, and since Dewhurst did not request findings of fact or object that the trial court failed to make findings of fact, the trial court did not err by failing to make findings of fact. TEX. R.APP. P. 42(A)(1). The trial court did not abuse its discretion (1) in allowing as much evidence on the merits of the cause as it did. *Bland ISD v. Blue,* 34 S.W.3d at 554, or (2) in making the findings necessary to support its order in this case. *See Carlin v. 3V Inc.,* 928 S.W.2d at 294.

Therefore, we hold that GMIT's suit is for declaratory judgment and injunctive relief, and not for specific performance of a contract and damages as claimed by Dewhurst in his One Issue. Dewhurst's Issue No. One is overruled.

We affirm the trial court's order denying Dewhurst's plea to jurisdiction. Pending proceedings for further appellate review and/or until the trial court conducts a hearing and rules on GMIT's prayer for injunctive relief, we grant injunctive relief as prayed for to maintain the status quo.