**TEXAS POWER & LIGHT CO. v. ROBERTS.**
(No. 5624.)

(Court of Civil Appeals of Texas. Austin. May 30, 1916.)

1. DAMAGES ⚖⇒147 — PLEADING — SPECIAL DAMAGES.

The petition of plaintiff seeking to recover special damages for defendant's failure to put in a partition to inclose office space rented to plaintiff must allege facts showing that at the time of the making of the contract defendant should have contemplated such damages would result from breach.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 410, 412; Dec. Dig. ⚖⇒147.]

2. PLEADING ⚖⇒228 — PETITION — BREACH OF CONTRACT—MOTIVE OF DEFENDANT.

Where no punitive damages were sought, and the petition averred that defendant maliciously breached its contract, special exception thereto should have been sustained, as defendant's motive was immaterial.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. ⚖⇒228.]

3. DAMAGES ⚖⇒37—RECOVERY—DOUBLE RECOVERY.

Defendant demised a portion of an office to plaintiff, agreeing to erect a partition inclosing it. Plaintiff intended to carry on a millinery business in the demised space, but defendant's failure to build the partition delayed the opening of plaintiff's shop to her damage. *Held*, that she could not recover for loss of profits of her business and at the same time for loss of time which she would have devoted to the business, for that would allow double recovery.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 237–241; Dec. Dig. ⚖⇒37.]

4. DAMAGES ⚖⇒40(2)—SPECULATIVE DAMAGES —PROFITS.

In such case, as plaintiff's business had not yet been started, her claim for lost profits occasioned by defendant's breach of contract is too remote, and cannot be sustained, but she may, upon showing that defendant knew injury would result to her from its failure to erect the partition pursuant to agreement, recover the net loss on her stock of millinery which she was unable to dispose of because of delay in opening; it appearing that such goods quickly depreciated in value due to change in styles.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 74–78; Dec. Dig. ⚖⇒40(2).]

5. EVIDENCE ⚖⇒498 — OPINION EVIDENCE — ADMISSIBILITY.

In such case, opinion evidence as to the amount for which plaintiff's millinery could have been sold, and its value after change in styles, is admissible; but plaintiff cannot give opinion evidence as to the probable damage to her business.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2289; Dec. Dig. ⚖⇒498.]

Appeal from Bell County Court; W. S. Shipp, Judge.

Action by Miss Lustre Roberts against the Texas Power & Light Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Spann & Spann, of Temple, for appellant.

KEY, C. J. The following statement of the nature and result of this suit is copied from appellant's brief:

"Miss Lustre Roberts, appellee, instituted this suit in the county court of Bell county, Tex., on the 29th day of August, 1914, against the appellant, alleging that on or about the 12th day of August, 1912, she had rented from the appellant a certain space in the office occupied by the appellant in the Temple State Bank Building, in the city of Temple, Bell county, Tex., from the 1st day of September, 1912, until the 1st day of January, 1913; that appellant agreed to partition said space from the balance of the office occupied by it and have the same completed by September 1, 1912; that she relied upon said rental contract and immediately went to market to purchase her stock of millinery goods to open her business, in said rented premises; that she did purchase her stock of merchandise; and that the same reached Temple on August 31, 1912. Appellee alleged that the appellant failed to comply with its contract to have said partition installed and completed by the 1st day of September, 1912, and did not complete the same until the 10th day of September, 1912; that she was thereby kept out of possession of said rented premises for a period of ten days; that by reason thereof she was unable to have her millinery opening and share in the early fall trade as she had contemplated, and because thereof she had suffered great damage.

"She further alleged that on or about the 15th day of September, 1912, she had customers come from nearby towns, who had come at her writ-

ten request, but that she could not effect sales with them because she was unable to show her merchandise on account of the failure of the appellant to install said partition.

"She further alleged that, had she secured the rented premises on September 1st, she could have had her opening and display as contemplated by her; and that as a result of said breach of contract she had a great deal of stock left on her hands at the end of the season, which she alleges was practically worthless because of the change in fashions and styles.

"She further alleged that it was understood and agreed that the appellant would cause to be installed in said rented space a water hydrant, and furnish her, the appellee, with water free of cost other than the agreed rental of $25 per month; that she repeatedly requested the installation of said water hydrant, and that the appellant failed to install the same, and that by reason thereof she was forced to go around the corner to a drug store to secure drinking water, and that she was unable to furnish her customers with drinking water, which humiliated her very much. (To these last-mentioned allegations the court sustained appellant's third special exception.) She further alleged that, by reason of the failure of the appellant to install and complete said partition by September 1st, she was caused to lose, and did lose, ten days of time from her employment, which was reasonably worth the sum of $100, and that, by reason of the delay in opening her establishment, she was unable to sell her goods and merchandise and meet her bills; that she was damaged in the sum of $500; that, by reason of the failure of appellant to install and complete said partition and to install said hydrant in said rented premises and to furnish her water, her said millinery business was for several months after September 10, 1912, greatly impaired and injured, from which injury her business had not recovered at the time of the trial, to her further damage in the sum of $400.

"Appellee prayed for damages in the sum of $1,000, for costs of suit, and for general relief. She did not allege that the appellant had notice of the special damages above mentioned at the time of making the contract.

"The appellant answered by general exception and nine special exceptions to the appellee's petition, all of which were by the court overruled except appellant's third special exception, which was by the court sustained. The action of the trial court in overruling said general and special exceptions has been assigned as error and will be presented under proper assignments. The appellant further answered by admitting that it had entered into the rental contract in the manner as alleged by the appellee, but denied that the time of the building of said partition in said rented premises was of essence and said that it did not contract, agree, or bind itself to install said partition in said rented premises on or before September 1, 1912, but that it was agreed that said partition should be installed and completed as soon after the 1st of September, 1912, as was convenient and possible.

"Appellant especially denied all other allegations contained in the appellee's petition, and that the failure on the part of this appellant to install said partition in any way caused or contributed to any of the appellee's alleged damages as set forth in said petition, and specially pleaded that appellee's alleged damage was not the natural or proximate result of the appellant's alleged breach of contract. The appellant's pleadings are only important to show the joinder of issue, since appellant introduced no evidence.

"The cause was tried by a jury. The appellee, being the only witness introduced, testified in her own behalf to the entering into of said contract, and that she was delayed ten days in obtaining possession of said rented premises by reason of the failure of the appellant to install said partition; that she afterwards opened in said rented premises a millinery business; that she lost ten days of her time by reason of the failure of the appellant to install said partition, which the court permitted her to estimate to be $100. On cross-examination she testified that she was not employed by any one; that she expected to receive returns for her labor by conducting a millinery store, trimming hats, offering them for sale, and to be paid for her services out of the profits of her business. The court also permitted her to testify, over the objection of appellant, that in her opinion from September 1, to September 10, 1912, she was damaged to the extent of $500. The court further permitted her to testify, over the objection of the appellant, that her business was injured after September 10th to the extent of several thousand dollars.

"At the close of the appellee's testimony, the appellee rested her case. Whereupon the appellant moved the court to instruct the jury to render a verdict in favor of appellant, which motion was by the trial court considered and overruled. Whereupon the appellant rested, the cause going to the jury under instructions from the court upon the testimony of the appellee only. The jury rendered a verdict in favor of the appellee for $500, upon which verdict the court accordingly entered judgment on the 6th day of April, 1915."

### Opinion.

Without making specific reference to the assignments of error presented in appellant's brief, we deem it sufficient to say that the questions hereafter considered are properly presented; and, having reached the conclusion that the case should be reversed, we announce our views upon the controlling questions as follows:

[1] The trial court should have sustained some of appellant's exceptions to the plaintiff's petition. The damages sought to be recovered are special damages, and therefore it was necessary for the plaintiff to allege in her petition such facts as would show that at the time the contract was made appellant should have contemplated that such damages would result from its breach thereof. No such facts were alleged, and, for that reason, the court should have sustained the general demurrer to the petition.

[2, 3] The special exception which was addressed to the paragraph of the plaintiff's petition, wherein it was alleged that appellant acted maliciously when it breached the contract, should also have been sustained. No punitory damages were sought to be recovered, and therefore appellant's motive for breaching the contract was immaterial. Nor was the plaintiff entitled to recover $100, or any other amount, for her alleged loss of employment. The undisputed proof shows that she intended to devote her time to the conduct of her millinery business, and to permit her to recover for both loss of time and injury to the business would allow a double recovery.

[4] We also sustain appellant's contention that, inasmuch as it was not alleged and proved that the plaintiff had an established business, her claim for net profits was too remote and speculative, as held by this court in Walter Box Co. v. Blackburn, 157 S. W.

220. The right to recover the loss of alleged profits as damages for breach of a contract is one upon which there is much diversity of opinion among the courts, and we do not desire to be understood as holding that such damages are not recoverable in any case. On the contrary, in American Construction Co. v. Caswell, 141 S. W. 1013, this court held that such damages were recoverable where the defendant had wrongfully diverted trade from the plaintiff's place of business. That case, it is true, was an action for tort and not for breach of contract; but, in considering whether or not damages sought to be recovered are too remote, we see no reason for making any distinction on that account. In the Caswell Case it was shown that the plaintiff had an established business; the amount of profits for several preceding years was shown, and it was also made to appear that such profits had materially decreased during the time for which plaintiff sought to recover damages; and this court held that such damages were not too remote and speculative. The reason why courts have refused to allow recovery for net profits which the plaintiff alleges he would have made from a business which was not in existence at the time the contract was made and breached seems to be that such alleged net profits are not capable of proof with that degree of certainty required by the law. Whereas, when a business is already established and is making a profit when the contract is breached or the tort committed, such pre-existing profit, together with other facts and circumstances, may indicate with reasonable certainty the amount of profit which would have been made but for the wrongful conduct complained of. However, while the plaintiff in this case may not be entitled to recover for loss of net profits, we are not prepared to hold that she is not entitled to recover substantial damages. If upon another trial her pleading shall be so framed as to admit it, and the testimony shall show that time for the completion of the partition which appellant agreed to put in the building by the 1st day of September, 1912, was of the essence of the contract, and that, on account of the failure to do so, the plaintiff was unable to sell a portion of her stock of millinery which otherwise she would have sold, and that on account of the nature of the millinery business, change in styles, etc., the value of said unsold portion was materially diminished, and to that extent constituted a loss, and that the defendant at the time the contract was breached had notice of such facts as would require it to contemplate that such loss would result directly from its breach of the contract, then the plaintiff would be entitled to recovery for such diminution in the value of that portion of the stock which she would have sold if the contract had been complied with, regardless of whether or not she would have made a net profit upon her entire business if appellant

had complied with the contract. In other words, if appellant's breach of the contract was the direct cause of her failure to sell her stock of millinery or any portion of it, for more than she was afterwards compelled to sell it for, and such result was in contemplation of the parties at the time the contract was made and breached, then she has sustained a pecuniary loss on account of such breach and appellant is liable therefor. Jones v. George, 61 Tex. 345, 48 Am. Rep. 280.

[5] Over appellant's objection, the court permitted appellee to state to the jury her opinion to the effect that she considered that her loss on account of appellant's breach of the contract resulting from her failure to have her opening and get her business started at the time she expected to was $500, and that the injury to her business generally was up into the thousands. If upon another trial appellee seeks to recover upon the only theory which our decision leaves open to her, she will prove about what portion of her stock of goods was not sold on account of her failure to begin business at the time she contemplated, how much such goods could have been sold for, and how much they depreciated in value on account of the change of styles, etc., and the difference will constitute the measure of damages; and therefore there will be no necessity for any opinion testimony, unless it be as to the amount of goods so left on hand, and the amount for which they could have been sold and their value after the change in styles, which will be proper testimony. Concurring with Prof. Wigmore, the writer of this opinion believes that a great deal of sophistry has been promulgated and many unsound rulings made in reference to the so-called opinion rule of evidence. In chapter 65, vol. 3, of Prof. Wigmore's admirable treatise on the Law of Evidence, the opinion rule is elaborately considered, the author's view being, in substance, that in all cases the true test should be whether or not the opinion of the witness could probably aid the jury or judge in determining a particular question of fact, and that when a witness, though a nonexpert, is familiar with the surrounding circumstances, he should be permitted to give his opinion, to be considered by the jury for no more than what they may consider it worth in determining the question to which the opinion relates; and in the concluding section of that chapter, among other things, the author says:

"If one were asked to name the rules most peculiar to the Anglo-American evidence-law, he ought perhaps to name the Character rule, the Hearsay rule, and the Opinion rule. Neither is found on the Continent. All three are indigenous judicial developments. All are the product of the jury system. All are founded on a peculiar cautiousness in our law, and all have been developed with an equally peculiar rigidity and stolid disregard of practical consequences. All three are complex and far-reaching in application as well as voluminous in detailed development. But a radically different future may be predicted for them. The Hearsay rule and the

Character rule will always remain in our law in a more or less relaxed form; while the Opinion rule will in substance disappear. An important difference between them is that the first two are the solid growth of experience; while the last rule, in its American development, is merely the logical technical development of a misunderstood term. The Opinion rule day by day exhibits its unpractical subtlety and its useless refinement of logic. Under this rule we accomplish little by enforcing it and we should do no harm if we dispensed with it. We accomplish little, because from the side on which the witness appears and from the form of the question, his answer, i. e., his opinion, may often be inferred. We should do no harm, because, even when the final opinion or inference is admitted, the inference amounts in force usually to nothing unless it appears to be solidly based on satisfactory data, the existence and quality of which we can always bring out, if desirable, on cross-examination. Add to this that, under the present liberal application of the rule, and the practice as to new trials, a single erroneous ruling upon the single trifling answer of one witness out of a dozen or more in a trial occupying a day may overturn the whole result and cause a double expense of time, money and effort; and we perceive the absurdly unjust effects of the rule. Add, finally, the utter impossibility of a consistent application of the rule, and the consequent uncertainty of the law, and we understand how much more it makes for injustice rather than justice. It has done more than any one rule of procedure to reduce our litigation towards a state of legalized gambling."

For the reasons stated, the judgment of the court below is reversed, and the cause remanded for another trial consistent with this opinion.

Reversed and remanded.