**STEINBERG et al. v. MORGAN.** (No. 2915.)

Court of Civil Appeals of Texas. Amarillo.
Nov. 30, 1927.

**1. Appeal and error ⬅⟞854(1)—If evidence on any theory authorizes trial court's judgment, it is duty of reviewing court to sustain judgment on such theory.**

If evidence on any theory of law sustains and authorizes trial court's judgment, it is duty of the Court of Civil Appeals to sustain judgment on that theory.

**2. Landlord and tenant ⬅⟞254(2)—Landlords expressly agreeing that meat market fixtures could be removed by plaintiff waived right to rent lien thereon.**

Where it was expressly provided in agreement that meat market fixtures were to be property of plaintiff, landlords thereby waived their rent lien thereon given by statute.

**3. Trial ⬅⟞350(4)—Refusal to submit to jury question of existence of parol agreements that defendants could hold meat market equipment until rent was paid held proper.**

Where landlords expressly agreed that meat market fixtures were to be property of plaintiff, court did not err in refusal to submit question to jury of existence of parol agreement that defendants would have right to hold equipment until rent was paid.

**4. Evidence ⬅⟞397(1)—Where written contract stipulated disposition of meat market equipment at termination of lease, oral testimony that defendants could retain equipment was immaterial.**

Where defendants expressly provided in written option that meat market fixtures were to be property of plaintiff, oral testimony on question of agreement between parties, providing that defendants were to retain possession of equipment, became immaterial.

**5. Contracts ⬅⟞176(1)—It is court's duty to construe for jury legal effect of unambiguous instrument or term thereof.**

Since construction to be placed on contract, where it is plain and unambiguous, is for court and should not be submitted to jury, it follows that it is court's duty to construe for jury legal effect of unambiguous instrument or term thereof.

**6. Trial ⬅⟞362—Where material issues submitted were answered by jury, trial court could only set verdict aside and grant new trial.**

Where issues submitted were material to decision of case and were answered by jury, trial court disagreeing with jury's findings could only set verdict aside and grant new trial.

**7. Trial ⬅⟞362—Trial court, after submitting case, could not ignore jury's findings and make independent findings and render judgment thereon.**

Where issues submitted were material to decision of case and were answered by jury, trial court, though concluding that evidence was insufficient to sustain answers of jury, could not set verdict aside, make independent findings, and render judgment thereon.

**8. Damages ⬅⟞87(1)—"Exemplary damages" are imposed to punish and are within discretion of jury.**

"Exemplary damages" are imposed for punishment, and are within discretion of jury within reasonable limits.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Exemplary Damages.]

**9. Damages ⬅⟞94—Rule that parties seeking recovery must show with reasonable certainty amount of damages does not apply to exemplary damages.**

The rule that parties seeking recovery must show with reasonable certainty the amount of their damages does not apply to exemplary damages, but injury complained of must have been consequence and natural and proximate result.

**10. Damages ⬅⟞87(2)—Before exemplary damages can be recovered, actual damages must be shown.**

Before exemplary damages can be recovered, actual damages must be shown to have been occasioned complainant.

**11. Damages ⬅⟞91(1)—Exemplary damages are recoverable for trespass on personalty, accompanied by willful fraud, malice, or gross negligence, whether action is for value of or recovery of property.**

Exemplary damages for injury to or trespass on personal property, where injury is accompanied by circumstances of willful fraud, malice, or gross negligence, are recoverable, and it is not material whether action is for value of or recovery of property.

**12. Damages ⬅⟞87(2)—Actual damages suffered by plaintiff in detention of meat market equipment furnished basis for recovery of exemplary damages.**

Damages suffered by plaintiff when defendants served notice on him to remove his meat market equipment and vacate premises furnished basis of actual damage for his recovery of exemplary damages.

Appeal from District Court, Hutchinson County; Newton P. Willis, Judge.

Suit by John Morgan against Moe Steinberg and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded for new trial.

Aynesworth & Lackey, of Stinnett, for appellants.

D. W. Tracy, of Borger, for appellee.

RANDOLPH, J. This suit was instituted by Morgan, as plaintiff, against Moe Steinberg, Joe Steinberg, Paul Steinberg, and the Steinberg Department Store, as defendants. Judgment for plaintiff, and defendants appeal.

Plaintiff was a butcher by trade; the

Steinbergs were running a department store in the town of Borger. Plaintiff owned butchering equipment and fixtures which at that time were in Denver, Colo. It appears from the plaintiff's evidence that he approached one of the defendants for the purpose of selling such equipment and fixtures. They did not agree on a sale of the fixtures, but entered into negotiations for the bringing of such butchering equipment to Borger from Denver, and for the use of space in defendants' storehouse for the purpose of having Morgan operate a meat market in connection with the store. Morgan testifies that defendants told him they were not going to buy any fixtures, and that they gave him an option in writing, which option is, in words, as follows:

"To Whom This May Concern:

"I, the said Moe Steinberg of the Steinberg Department Store of Borger, Tex., offer to grant the said John Morgan a concession in the above-mentioned store to conduct a first-class wholesale and retail meat market. And I also offer to finance the said John Morgan to the extent of $500, providing he can install suitable fixtures, including refrigeration, to conduct same. The fixtures to be the property of said John Morgan.
"Steinberg Department Store,
"Moe Steinberg."

The evidence discloses that Morgan owed some debts in Denver, which it was necessary to pay before he could have the equipment released to have it shipped to Borger, and that Morgan did not have the money with which to pay the freight on same from Denver to Borger, and the $500 was to be advanced for the purpose of enabling Morgan to pay off the debts and to pay the freight.

Soon after the above option was executed, the following memorandum of another option was delivered to Morgan:

"We hereby agree to grant a concession in the Steinberg Department Store to Mr. John Morgan for the purpose of selling meats, fresh and smoked, for the consideration of 50 per cent. on the net profit of the meat market. No salaries to be drawn by either parties. John Morgan shall have a drawing account of $15.00 to $25.00 per week as living expenses above amount to be deducted from net profits on his part. Option on above concession expires September 15, '26.
"Moe Steinberg."

Morgan also testifies that this contract was to continue for 12 months or as long as he wanted it; that, in locating the market in the store, he asked for space with a window in front, but this Steinberg declined to allow, and they finally agreed on placing it about 35 or 40 feet from the front of the store, the storeroom being 120 feet long.

When the equipment arrived, Morgan notified Steinberg that the goods had arrived, and he refused to pay the freight unless he had a new agreement, and wanted Morgan to work for wages for a couple of months in order to try out the scheme. This Morgan refused to do, and demanded that they go on with the first contract. About a month from the time of the arrival of the equipment, another contract was signed by the parties, which is in words, as follows:

"This agreement, made this the 19th day of October, 1926, by Moe Steinberg of the Steinberg Department Store, and owner of said store, Borger, Tex., party of the first part, and John Morgan, of Borger, Tex., party of the second part. That the said party of the first part hereby permits second party to put into the building of first party, a meat market, for a period of sixty days, at the rate of 3 per cent. per gross sales out of said meat market. At the end of sixty days, if both parties are satisfied with their arrangement, which is of a temporary nature, then the said parties agree to execute a contract for at least one year's extension of time, at terms and conditions to be agreed upon at that time. If the parties, or either of them, are dissatisfied, then second party is to remove therefrom his meat market with all furniture and fixtures.

"Witness our hands this the day and year first above written.          Moe Steinberg.
                                        "John Morgan.

"P. S.—All receipts of each day's sale to be turned over to Moe Steinberg. All expenses from now on first party is out for freight, storage and hauling of second party's fixtures, is to be paid for by second party; second party is to draw $25.00 per week. Fixtures to be in store by October 25th or 26th. Second party is to handle fresh and smoked meats and lard.
                                        "Moe Steinberg.
                                        "John Morgan."

It further appears from the evidence that the parties then began wrangling over a location of the market in the store, and finally, over Morgan's protest, it was located at the rear of the storeroom. It also appears from Morgan's testimony that the Steinbergs then piled up their goods so as to shut off the view of this market, and by various acts of theirs sought to render it impossible for him to do business. Finally they served notice on Morgan to remove his equipment and vacate the premises, but, when he sought to do so, they refused to let it be removed unless he would release them from all claims for damages, etc. This suit was then brought and the equipment sequestered by the plaintiff; whereupon the defendants gave bond and replevied the equipment and retained possession thereof.

[1] This statement is made principally from the plaintiff's evidence, though such evidence conflicts with that of the defendants. If this evidence, upon any theory of law, sustains and authorizes the trial court's judgment, it is our duty to sustain such judgment, upon such theory.

The appellants present two issues, based upon "fourteen points," and we shall not attempt to discuss each of the fourteen points, but will only discuss such issues arising

thereunder as are necessary to the decision of the controlling questions on this appeal.

[2, 3] The appellants present the issue that the trial court erred in not holding that defendants were entitled to a lien upon the equipment for past-due rent and in not holding that the appellants had a landlord's lien thereon and entitled to hold same until their rent was paid.

It is expressly provided in the written option first given Morgan by Steinberg that the fixtures are to be the property of Morgan. The final written contract provides that at the end of 60 days, if both parties are satisfied with their arrangement, they are to execute a contract for at least one year's extension of time, and, if the parties or either of them are dissatisfied, then second party is to remove therefrom his meat market with all furniture and fixtures.

[4, 5] The oral testimony given in the case by defendants, upon the question of the agreement between the parties, providing that the defendants were to retain possession of the equipment, becomes immaterial if the provisions of the written contract clearly stipulate the disposition of the equipment at the termination of the lease. The construction to be placed upon the contract, where it is plain and unambiguous, is one for the court, and should not be submitted to the jury. This means that it is the duty of the court to construe for the jury the legal effect of an unambiguous instrument or a term thereof. Soell v. Hadden, 85 Tex. 182, 187, 19 S. W. 1087.

It may have been that the parties expected that all sums due one to the other would have been liquidated within the 60 days, and that there would be no question of indebtedness between them. It is clear, however, that the parties had made a provision for the payment of such sum, as appellants' claim for rent, by the provision for the 3 per cent. on the net profits. But, in any event, the term of the contract above quoted clearly shows that the plaintiff had the privilege, on notice, to remove his equipment from the store. This construction was placed on the contract by Steinberg when he notified the plaintiff to remove his equipment from the premises. 13 C. J. 546.

By this provision, the defendants clearly waived their rent lien given them by the statute. It appears from the evidence, therefore, that the claim of a lien for rent was evidently an afterthought, and in direct contravention of the above-quoted term of the contract. The trial court therefore did not err in holding that there was no right of retention of the equipment in the appellants for rent due, and did not err in refusing to submit the question to the jury of the existence of a parol agreement that the defendants would have the right to hold the equipment until such rent was paid.

The trial court submitted the case to the jury upon the following special issues:

"Question 1: What was the reasonable cash market value of the meat showcase that was broken at the time and place it was broken? Answer this question in dollars and cents.

"Question 2: What was the fair cash market value on January 13, 1927, of the following articles, to wit: One ice box, two meat blocks, scales, sausage mill, two showcases, cleavers, saws, and other items that go to make up a meat market? Render your answer in dollars and cents separately as to each item.

"Question 3: What was the fair cash market value on January 13, 1927, of all the property that belonged to the plaintiff which was kept and retained by the defendants? Answer this question in dollars and cents.

"Question 4: Did the defendants' comply with their contract in respect to the location and maintenance of plaintiff's business in their store? Answer this question 'Yes' or 'No.' If you answer this question 'Yes,' you need not answer any succeeding questions. If you answer the foregoing question 'No,' then answer the following:

"Question No. 5: Did the plaintiff, Morgan, sustain a loss of profits by reason of failure of defendants to comply with their contract? Answer this question 'Yes' or 'No.'

"Question No. 6: If you have answered the foregoing question 'Yes,' then state the amount of dollars and cents that plaintiff lost in profits because of defendants not complying with the contract.

"Question No. 7: Did the plaintiff sustain exemplary damages? Answer this question 'Yes' or 'No.'

"Question No. 8: If you have answered the foregoing question 'Yes,' then state the amount of exemplary damages plaintiff sustained in dollars and cents."

Upon receipt of the verdict, and in the consideration of a motion for the rendition of judgment, the court entered his order setting aside the verdict, and rendered judgment as follows:

"* * * And afterwards, to wit, on the 19th day of April, 1927, comes on to be heard motion for judgment on said verdict, and the court, being fully advised in the premises, finds that the matters and things involved in questions and answers Nos. 1 and 6 are not sufficiently sustained by the pleadings and the evidence, and the same are set aside; that the defendants had no lien upon any part of plaintiff's property, set out in his first amended original petition; that the retention by the defendants of said property and withholding the same from plaintiff was wrongful and malicious; that plaintiff is entitled to recover said property, or the value thereof, from the defendants, and to have judgment against the defendants as exemplary damages in the sum of $2,000, to be credited, however, with the sum of $278.28, which it is conceded and agreed to by the parties in open court that the plaintiff owed the defendants at the time this controversy arose.

"It is therefore considered, ordered, and adjudged by the court that the plaintiff, John Morgan, do have and recover of and from the defendants Moe Steinberg, Joe Steinberg, Paul

Steinberg, and the Steinberg Department Store, a partnership, the sum of $2,025.10, the value of said property itemized and of the value as follows, to wit: One ice box or cooling room, $800; two meat blocks, $60; scales, $100; sausage mills, $200; two showcases, $500; cleavers, $7.50; saws and other items that go to make up a meat market, $357.60—but it is provided that, in case the said defendants, within 10 days of this date, deliver to the sheriff or constable of this court the said property or any part thereof, this part of this judgment shall be credited with the value of such property so delivered, according to the value of the items above enumerated and valued, if said property shall be returned to said sheriff or constable in an undamaged condition; and it is further provided that, in case the defendants, within 10 days of this date, fail to deliver the whole or any part of the said property in an undamaged condition to said sheriff or constable, let execution issue for the value, as herein itemized and valued, of all or such part of said property not so delivered, together with all the costs of this action.

·"It is further considered, ordered, and adjudged by the court that the plaintiff aforesaid do have and recover of and from said defendants the sum of $1,721.72, together with all the costs of this action, for all which let execution issue."

[6, 7] It will be seen that the issues submitted were material to a decision of the case, and, same having been submitted to and answered by the jury, the trial court could only set the verdict aside and grant a new trial. He could not, after thus submitting the case, ignore the jury's findings. The conclusion of the trial court that the evidence was insufficient to sustain the answers of the jury did not authorize the trial court to set the verdict aside, make independent · findings of his own, and render judgment on such independent findings. Waller v. Liles, 96 Tex. 21, 70 S. W. 17; Ablowich v. Bank, 95 Tex. 429, 67 S. W. 79, 881; Henne & Meyer v. Moultrie, 97 Tex. 216, 77 S. W. 607; Fant v. Sullivan (Tex. Civ. App.) 152 S. W. 515; Swearingen v. Swearingen (Tex. Civ. App.) 193 S. W. 445; Massie v. Hutcheson (Tex. Com. App.) 270 S. W. 544; Bowles v. Bryan (Tex. Com. App.) 247 S. W. 276, 280.

[8-10] Exemplary damages are imposed for the sake of punishment, and are within the discretion of the jury, within reasonable limits, and the rule that the parties seeking recovery must show, with reasonable certainty, the amount of their damages, does not apply. 17 C. J. 971. However, it is requisite that the injury complained of must have been the consequence and the natural and proximate result thereof (17 C. J. 971), and, before exemplary damages can be recovered, actual damages must be shown to have been occasioned the complainant (17 C. J. 974).

[11, 12] In this case, actual damage was claimed by the plaintiff, by reason of his loss occasioned by being deprived of the use of the equipment. The recovery of exemplary damages for an injury to or a trespass upon personal property, where such injury is accompanied by circumstances of willful fraud, malice, or gross negligence, is allowed, and it is not material to the application of this rule whether the action is for the value of the property or for the recovery of the property itself. 17 C. J. 890. This being the rule, the damages suffered by the plaintiff, in the detention of his property, furnishes a basis of actual damage for a recovery of exemplary damages.

The conduct of the defendants, as testified to by the plaintiff, and the circumstances surrounding the whole transaction on their part, shown by the evidence, raise the question of fraud for the consideration of the jury. This evidence, in view of another trial, will not be here discussed.

We have carefully considered the other assignments of error not herein discussed, and find no additional reversible error, and they are therefore overruled, but, for the error of the trial court in setting aside the verdict of the jury and in rendering judgment, as above discussed that judgment is reversed and remanded for a new trial.

HALL, C. J. I agree that the judgment should be reversed and the cause remanded.