**MORGAN v. STEINBERG et al. (No. 3270.)**

Court of Civil Appeals of Texas. Amarillo. Dec. 18, 1929.

Rehearing Denied Jan. 15, 1930.

528

Gipson, Ivester & Hogge, of Amarillo, and D. W. Tracy, of Pampa, for appellant.

Underwood, Johnson, Dooley & Simpson, Vance Huff, and Rip C. Underwood, all of Amarillo, for appellees.

HALL, C. J. The appellant, Morgan, sued Moe Steinberg, Joe Steinberg, Paul Steinberg, and the Steinberg Department Store, a partnership, to recover damages, actual and exemplary, growing out of a breach of two contracts made between plaintiff and the defendants. The former appeal was from a judgment rendered after a hearing upon the merits. (Tex. Civ. App.) 300 S. W. 253. Since that trial, plaintiff has amended his pleadings, and the last trial was upon plaintiff's third amended original petition. This pleading is voluminous, and, with the exhibits, covers 35 pages of the transcript.

Since the court sustained a general demurrer and numerous special exceptions to the pleading, and dismissed the suit upon plaintiff's refusal to amend, and the appeal is from that order, it is necessary to state with some fullness the allegations of such amended petition. The plaintiff alleged:

That on and prior to the 27th day of August, 1926, the defendants were merchants,

doing business in the town of Borger under the firm name of the Steinberg Department Store, and that Moe Steinberg was the managing partner. That, long prior to said date, plaintiff was the owner of a complete set of tools and fixtures, including ice box, display cases, and all other tools, etc., necessary to equip a meat market. That he was a butcher by trade, and on the last-mentioned date the defendants offered to grant plaintiff a concession and space in their storehouse in Borger, said offer being in writing as follows:

"To Whom This may Concern:

"I, the said Moe Steinberg, of the Steinberg Department Store, of Borger, offer to grant the said John Morgan a concession in the above-mentioned store to conduct a first class wholesale and retail meat market. And I also offer to finance the said John Morgan to the extent of $500.00, providing he can install suitable fixtures, including refrigeration, to conduct the same. The fixtures to be the property of the said John Morgan.

"[Signed] Steinberg Department Store.
"Moe Steinberg."

That thereafter, and within a few days, the defendant submitted to plaintiff a further proposition in writing, as follows:

"We hereby agree to grant a concession in the Steinberg Department Store to Mr. John Morgan for the purpose of selling meats, fresh and smoked, for the consideration of fifty per cent on the net profit of the meat market. No salaries to be drawn by either parties. John Morgan shall have a drawing account of $15.00 to $25.00 per week as living expenses. Above amount to be deducted from net profits on his part. Option on above concession expires Sept. 15, '26.

"[Signed] Moe Steinberg."

That said defendants agreed, in consideration of the shipment by the plaintiff from Denver, Colo., to Panhandle, Tex., of his tools, fixtures, and meat market equipment, and from Panhandle to Borger by truck, and the installment of said fixtures in said store, that the said defendants would furnish plaintiff the sum of $500 with which to pay preliminary expenses, such as drayage and crating, and, when installed and operated, to allow this plaintiff 50 per cent. of the net profits to be derived from the sale of meats sold in said store. That plaintiff accepted said proposition, and the said Moe Steinberg, acting for himself and his codefendants, entered into a contract, partly written and partly oral— that part which was written consisting of the written option last submitted to plaintiff— and as a part thereof orally agreed that the defendants would lease unto plaintiff for a period of one year from said date space in said store building in which to place his fixtures and furniture for use in conducting the market. That the amount and extent of space was to be determined when the fixtures were moved into the store building. That the front of the display cases were to face west and to be not more than 40 feet from the front of the building, which faces west on the street. They further agreed, as a part of the contract, that unobstructed aisles from the front of the building to the market should be kept open and free from goods, so as not to obstruct the view of the market from persons entering into the front of the store. It was further agreed that the front door of the north half of the building should be opened not later than 6 o'clock on each day of the week during the term of the lease. That the meat and meat products purchased in the conduct of the market should be charged to the defendants' account, and the defendants would pay for said purchases when due. That plaintiff was to turn over to Moe Steinberg all moneys received from the sale of meats, from which sums Steinberg was to reimburse himself and codefendants in such sums as he had advanced in the payment of bills. That the net profits were to be equally divided between the plaintiff and the defendants, and that plaintiff had the right to withdraw from the receipts of the business for his living expenses from $15 to $25 per week, which would be charged against his share of the net profits.

It was further orally agreed as a part of the original contract that defendants would furnish plaintiff money to go to Denver and return, and with which to pay the expenses of crating his furniture and fixtures and pay freight thereon from Denver to Panhandle, and that defendants, as soon as the furniture and fixtures should reach Panhandle, would pay the drayage expenses necessary in transporting them to Borger, as at that time there was no railroad connecting Borger with Panhandle. Plaintiff further alleges that he went to Denver, caused the fixtures to be crated and shipped, freight to be paid upon arrival. That the bill of lading was mailed to and received by Moe Steinberg, who delivered it to plaintiff. That, upon arrival of the freight at Panhandle, plaintiff notified defendants, and requested that they pay the freight charges and the cost of transportation from Panhandle to Borger, as they had agreed to do, but that defendants failed and refused to pay the freight or advance the transportation charges, and notified plaintiff that they were unwilling to proceed further with the contract, and that they would not pay the freight or drayage, or allow plaintiff to place his furniture and fixtures in their building, and then and there terminated the contract without the consent and over the protest of plaintiff. That prior to the time the parties entered into said contract, plaintiff informed defendants that he was without funds and was unable to raise the money to conduct a meat market in Borger, or to pay freight and drayage on his fixtures and meat market equipment. That the defendants

knew that no other space suited for conducting a meat market in Borger was available to plaintiff at that time. That his said tools, fixtures, and equipment were being held for freight charges and storage by the railroad company in Panhandle, and defendants knew he was without money to redeem said property and was unable to find a suitable location for conducting a meat market. That because of these facts, and plaintiff's financial stress, he had no other alternative than to accept and enter into a second contract with defendants for space in their building, which said second contract he accepted in order to mitigate his damages occasioned by breach of the first contract, and without waiving the damages sustained by him by reason of the breach and termination of the first contract, he did, on or about the 19th day of October, 1926, enter into a second contract, partly in writing and partly oral, the written portion being as follows:

"This agreement made this the 19th day of October, 1926, by Moe Steinberg, of the Steinberg Department Store, and owner of said store, Borger, Texas, party of the first part, and John Morgan, of Borger, Texas, party of the second part: That said party of the first part hereby permits second party to put into the building of first party a meat market for a period of sixty days at the rate of three per cent. per gross sales out of said meat market. At the end of sixty days, if both parties are satisfied with their arrangement, which is of temporary nature, then the said parties agree to execute a contract for at least one year's extension of time at terms and conditions to be agreed upon at that time. If the parties or either of them are dissatisfied, then second party is to remove therefrom his meat market, with all furniture and fixtures. Witness our hands this the day and year first above written.

"[Signed]    Moe Steinberg.
"John Morgan.

"P. S.—All receipts of each day's sale to be turned over to Moe Steinberg. All expenses from now on first party is out for freight, storage, and hauling the second party's fixtures is to be paid for by second party. The second party is to draw $25.00 per week. Fixtures to be in store by October 25th. Second party is to handle fresh and smoked meats and lard."

That, as a part of said last-mentioned contract, it was orally agreed that the defendants would pay the freight charges and drayage required in transporting the furniture, fixtures, and equipment from Panhandle to Borger, would permit plaintiff to place the same in said building, as formerly agreed, that defendants would furnish all money necessary to purchase meats for use in conducting the business, that the front door of the building on the grocery side should be opened every weekday morning not later than 6 o'clock a. m., that aisles should be kept open and unobstructed from the front of the building to the market, and that said lease and right to occupy space should extend for 60 days from the date when the fixtures were placed in the building, which term, at the option of the parties, might be continued for 12 months. That defendants were to receive, as full compensation for the use of the space and financing the market business, 3 per cent. of the gross sales made in connection therewith, plaintiff to pay over each day's sales to defendants, but to draw $25 per week for living expenses, out of which he agreed to repay all freight and drayage charges incident to moving his furniture and fixtures from Denver to Borger.

He further alleges that at all times he was ready, willing, and able to comply with said contract, that he never agreed to the termination of the first contract, that it was breached by the defendants over his protest, and that he has never waived his rights under said first contract. That at the time of the execution of the first contract, and on or about the 10th day of September, 1926, when the same was breached, Borger was a prosperous city of approximately 30,000 people. That, due to the rapid growth of said city, vacant business houses were scarce, and it was practically impossible for a meat vender to secure a location for a market at any price. That meat market business was profitable in said town at that time and for more than a year thereafter. That the defendants' building was located on the main street and near the business center of said town. That defendants enjoyed a large retail trade, and by reason thereof the space granted plaintiff was very valuable, and the contract for said space was of the reasonable cash market value to plaintiff of $3,000, since it ran, or would run, for a term of one year. That, because the second contract might be terminated at the end of 60 days, the lease value was less and did not exceed $300. That, by reason of the defendants' breach of the first contract, plaintiff has sustained damages in the value of said lease contract in the sum of $3,000. That the benefit accruing to him by virtue of the second contract was the value of said second lease, not to exceed $300, and by reason thereof plaintiff sustained damages over and above all benefits received, in the sum of $2,700. That during the time plaintiff was prevented from establishing and conducting his business by the defendants' breach of the contract, to wit, from the 29th day of September, 1926, to October 29, 1926, that Borger was crowded with people, and it was difficult for the meat markets in said city to supply the demand. That other markets conducted by experienced men similarly situated, working 16 hours a day, could scarcely supply the demand for meats sold at a profit of 33⅓ per cent. of the cost price. That immediately upon the establishment by plaintiff of his mar-

ket, on and after the 29th day of October, 1926, hampered and hindered as he was, he sold for the period of 51 days meats and stock that cost $4,500 for the sum of $6,000. That the expenses of running said business during said period was $841, and his net profits for the same period amounted to $659. That by reason of being hampered and hindered by defendants, plaintiff's sales during said period were decreased at least 70 per cent. of the total amount of business he could have done, if defendants had complied with their contract. That, if defendants had complied with the contract as made, plaintiff could and would have sold meat and meat products to the amount of $18,000, at a gross profit of $6,000, and running expenses in the sum of $841, leaving a net profit of $5,159. That, under the same conditions and surroundings, plaintiff would and could have sold meats and market stock during the period from September 29, 1926, to October 29, 1926, during which time he was prevented from establishing said market, to the extent of $10,000, at a gross profit of $3,300, less an expense of $500, making a net profit of $2,800, which loss is due to the act of the defendants in breaching their said contract.

The prayer is for judgment in the sum of $5,500, with all costs of suit, and for all relief, both general and special, to which he may be entitled, either in law or in equity.

Plaintiff further sues for a breach of the second contract, alleging in substance:

That at the time of the making of the second contract, on or about the 19th of October, 1926, he notified defendants that he was ready, willing and able to carry out the terms of the contract, and to move his fixtures from Panhandle as soon as defendants paid the freight and the cost of drayage from Panhandle to Borger. That defendants paid said charges and caused the fixtures to be removed to Borger on the 23d day of October, 1926, and on the 24th day of October, said fixtures were installed in the building for the first time. Thereupon Moe Steinberg, acting for his codefendants, informed plaintiff that defendants had changed their minds with reference to the location of the market in the building, and had decided that the fixtures must be placed near the rear or east end of the storehouse, more than 100 feet from the front of the store. That plaintiff then and there reminded defendants that under both contracts it was agreed that the fixtures should be placed not more than 40 feet from the front door, and demanded that space be furnished him accordingly, and discussed with defendants the disadvantage of placing the market in the rear of the store. That because of his financial condition, and the further fact that his fixtures were in the building, plaintiff was practically at the mercy of the defendants, and was unable to resist them in the disposition and location of his fixtures. That defendants, over his protest, installed the market fixtures in a space at the rear of the store, where they remained during the period in which plaintiff was permitted to operate a market in the store, and until he was evicted on the 18th day of December, 1926, after which they were moved by defendants to the front space, where they were located and used by defendants in conducting a meat market under their own ownership and control. That immediately after said fixtures were placed in said store, on the 24th day of October, 1926, they were made ready for the receipt of the stock, and the business was opened on the 29th day of October, 1926, and the business was conducted up to and including the 18th day of December, 1926, when, without lawful reason or excuse, and without any fault on the part of this plaintiff, and over his protest, defendants breached said second contract and repudiated the same, and demanded of plaintiff possession of the space occupied as a market, and demanded that he remove his fixtures from the building.

That during the 51 days which he conducted said business he sold meats and meat products to the value of $6,000. A detailed statement of said sales is attached as an exhibit to the pleadings. That the meats so sold cost $4,500, and the expenses incident to the business amounted to $841 for the period of 51 days. That notwithstanding the agreement providing that the front door of the building should be opened not later than 6 a. m., plaintiff alleges that on the 29th day of October, 1926, defendants failed and refused to open the store prior to 8 o'clock a. m., thus depriving plaintiff of the privilege of selling meats and other products, as originally agreed. That defendants piled their goods in the aisles of the store, and obstructed access, and obscured from new customers the meats and products which plaintiff had displayed for sale. That a large per cent. of the population was fed by restaurants of said city, which secured meats for their customers between the hours of 6 o'clock and 7 o'clok a. m. each day, and by reason of the refusal of the defendants to open the grocery side of said building before 8 o'clock a. m. plaintiff was deprived of the patronage of all such customers, which constituted at least 50 per cent. of the retail meat market trade of said city during said period.

He alleges: That the acts of the defendants in refusing to open the store, and in piling their other goods so as to obscure the meat market business and obstruct the aisles, were wrongful, deliberate, and studied on the part of the defendants, and done for the malicious, wrongful, fraudulent, and mean purposes of harassing plaintiff, and to make said business unprofitable to plaintiff, and to discourage and force plaintiff from said building, and to secure his market, tools, furniture, and equipment for their own use and benefit. That, not being satisfied with hampering and harassing plaintiff and throwing every ob-

stacle in his way, the said Moe Steinberg terminated the second contract and forced plaintiff to leave said premises and abandon said market 9 days prior to the expiration of the 60 days during which the lease extended. That said 9 days extended through the Christmas holidays, and constituted the most prosperous period for the operation of a meat market during the year. That, by reason of the wrongful acts hereinabove set out, the value of his said lease contract became depreciated, and by reason of the wrongful termination thereof on the 18th day of December, 1926, and plaintiff's eviction from said market, he was deprived of his profits and sustained damages in the sum of $4,000. That plaintiff had on hand on said December 18, 1926, stock of the value of $1,003.32 wholesale, and, if he had been allowed to conduct the business until the end of the 60 days as per contract, he would have sold all that he had and an equal amount more of stock up to and including the 27th day of December, 1926, and that the profits on such sales would have been at least $665. That the additional expenses would not have exceeded $165 by reason of which plaintiff has been damaged in the additional sum of $1,335, occasioned by lost profits between December 19 and December 28, 1926.

It is further alleged that on the 18th of December, 1926, defendants notified plaintiff that they had terminated the contract, and they then and there demanded possession of the space occupied by the market, and that plaintiff remove his fixtures from the building; but, because plaintiff had no building at that time into which he could move his fixtures, defendants agreed that he might leave them where they were for a few days. That about January 3, 1927, plaintiff found a place suitable for installing his fixtures and entered into a lease contract for the premises, and on the morning of January 4, 1927, went with the necessary trucks and laborers to the defendants' store for the purpose of moving his fixtures and furniture, and defendants denied him the right to remove the same unless plaintiff would sign an agreement, in writing, to release defendants from any damages or cause of action which plaintiff might assert against them by reason of their breach of the first and second contracts. That plaintiff refused to execute any such a release and again demanded possession of his property, which request was refused by defendants. That they converted his property and retained possession thereof from the 4th day of January, 1927, until the 30th day of April, following, when they delivered possession in obedience to the order of the district court entered on the 16th day of April, 1927. That, while defendants retained his said tools, furniture, and fixtures, they conducted a meat market for their own use and benefit, to the exclusion of plaintiff, and that said property, at the time of its conversion, was of the fair market value of $3,500. That by the wrong-

ful withholding of possession of his furniture defendants forced plaintiff to lose the rent upon the building which he had leased after defendants evicted him, and because he had no other fixtures and equipment to put in a market and was financially unable to install one, he suffered loss and damages by reason thereof, and because of the wrongful, willful, and fraudulent acts of defendants in depriving him of his property and preventing him from engaging in business in Borger, and for the purpose of destroying his credit, he was damaged in the sum of $2,900, or $25 per day for 116 days. That, by reason of the wrongful, illegal, and oppressive acts of the defendants, plaintiff has been annoyed, harassed, and caused to suffer humiliation and mental anguish, his credit with wholesale houses and his financial standing has been destroyed, and by reason of their willful and fraudulent conduct he has suffered exemplary damages in the sum of $10,000.

He prays for judgment for his exemplary damages, and such other relief, both general and special, as he may be entitled to in law and in equity.

█ It is clear that the trial court erred in sustaining the general demurrer to the cause of action based upon the breach of the first contract. Whether the first contract was in legal effect an agreement to enter into a partnership in conducting a meat market is a question which we deem unnecessary to be decided; but, if it be admitted that it was a contract in virtue of which Morgan and the Steinbergs were to constitute a partnership, the allegations of the petition show a breach of the contract, for which an action for damages would lie, and since no partnership was ever formed, plaintiff was not required, of course, to pray for an accounting. There is nothing in the pleading excepted to which tends to show that by entering into the second contract, after the breach of the first, plaintiff waived or intended to waive his right of action for damages. There was no allegation which could be construed as showing that the execution of the second contract was intended to be an accord and satisfaction, a settlement or compromise, a merger or a novation, of the first contract. The allegations expressly negative any of these theories and deny that the second contract was substituted for the first. Reed v. Ehlinger (Tex. Civ. App.) 25 S.W. 703; Alabama Oil & Pipe Line Co. v. Sun Co., 99 Tex. 606, 92 S. W. 253; Bering Mfg. Co. v. Carter et al. (Tex. Civ. App.) 255 S. W. 243; Tony v. McClelland (Tex. Civ. App.) 283 S. W. 679; 13 C. J. 598, 599.

█ This will require a reversal of the judgment. Plaintiff alleges a contract and its breach, and from these allegations at least nominal damages must be implied.

█ We think the court also erred in sustaining the general demurrer to the cause of action based upon a breach of the second contract, in so far as the allegations show a con-

version of the equipment belonging to plaintiff. Both contracts expressly state that all tools, fixtures, and furniture are the property of the plaintiff. This being true, defendants had no interest in or lien upon them. If the defendants converted this equipment, detained it, and used it themselves, depriving plaintiff of the use thereof, he is clearly entitled to whatever damages may result. It is true that plaintiff does not pray for an accounting. The general rule is that in actions between partners there must be an accounting before the amount recoverable can be ascertained. But since the business continued for less than 60 days and the defendants kept the funds and paid the running expenses, and the accounts seem to be simple and easily understood by the jury, an accounting is not necessary. Chipley v. Smith (Tex. Com. App.) 292 S. W. 209. The contract provides that plaintiff was entitled to retain from $15 to $25 per week for his living expenses, and that the defendants should be reimbursed out of plaintiff's share of the profits for expenses paid by them upon freight bills, transportation charges from Panhandle to Borger by truck, etc. There is nothing intricate or complex in that matter requiring the services of expert accountants. It therefore follows that the court erred in sustaining the general demurrer to the second ground of recovery.

In addition to the general demurrer, the appellees urged what they say are numerous special exceptions. Upon examination, we find that they are general demurrers to specific allegations and portions of the amended petition. A special exception challenges the manner and form of the pleading, and a general demurrer goes to its substance. A general demurrer may be to the pleading as a whole, or to any specific ground of recovery or defense. Measured by this rule, the appellees urged no special exception to the petition.

There was no misjoinder of causes of action. Both grounds of recovery grew out of the same transaction, and are so intermingled that they were properly joined in the same suit.

The allegations, if true, with reference to exemplary damages, show fraud, oppression, duress, and a degree of willfulness upon which a claim for exemplary damages may be properly based. The fact that plaintiff alleges a measure of damages which is not recoverable would not render the pleading subject to a general demurrer. Under the allegations, the loss of profits, if any, are recoverable in this action. Grand Prairie Gravel Co. v. Joe B. Wills Co. (Tex. Civ. App.) 188 S. W. 680; Texas Power & Light Co. v. Roberts (Tex. Civ. App.) 187 S. W. 225.

With reference to each of the contracts, the allegation is that part thereof is evidenced by writing and the remainder is oral. It appears that no part of the agreement alleged to have been oral is inconsistent with the writing. The matters alleged simply explain how the contract is to be carried out, and make more specific the obligations implied by the writings. This does not violate the parol evidence rule. Missouri, K. & T. Ry. Co. v. Stark Grain Co., 103 Tex. 542, 131 S. W. 410. The first two writings set out in this opinion may be considered as evidencing in part the first contract. Parol evidence is generally admissible to show that a condition precedent to the liability of a party or the performance of the writing has been fulfilled, and it is further admitted for the purpose of showing noncompliance. Wilson v. Clark, 35 Tex. Civ. App. 92, 79 S. W. 649. It is further held that the parol evidence rule does not exclude testimony necessary to make a writing effective which on its face is clearly incomplete, and to connect different writings which on their face do not show any connection. City of Brownsville v. Tumlinson (Tex. Civ. App.) 179 S. W. 1107; Magnolia Warehouse, etc., Co. v. Davis (Tex. Civ. App.) 153 S. W. 670; Swope v. Liberty County Bank, 52 Tex. Civ. App. 281, 113 S. W. 976. And under such circumstances it is not necessary that there should be any allegation of fraud, accident, or mistake, in order to render parol evidence as to what the complete contract between the parties was admissible. 22 C. J. 1283–1290.

One of the so-called special exceptions is to the effect that the allegation with reference to the promise of defendants to open the store every morning at 6 o'clock shows a contract to violate the Sunday law, and void for that reason. It is not specifically alleged that the store was to be opened at 6 o'clock on Sunday mornings, and where a contract is susceptible of two constructions, one of which would make it legal, and the other illegal, the courts will adopt the former.

It appears from the record that the court first sustained the general demurrer and afterwards sustained certain so-called special exceptions. After sustaining a general demurrer, the court should not have thereafter acted upon any exception to any specific allegation in the pleading. If the petition as a whole did not entitle plaintiff to recover, certainly no particular allegation would give him that right. For this reason we are not required to consider the assignments challenging the action of the court in passing upon the so-called special exceptions, and we have discussed them briefly only because the judgment must be reversed, and the cause remanded for another trial.

Reversed and remanded.